## CHARLES M. BRUCE *v.* JAMES I. BISHOP.

### *Sale.  Contract.  Evidence.*

The defendant and one Sleeper were in litigation about a cow which the defendant had sold to Sleeper and which Sleeper then owned. The plaintiff, then at work for Sleeper, made some remark to the defendant about the value of the cow, and the latter told the plaintiff that he would give forty dollars for the cow if the plaintiff would deliver her to the defendant in as good condition as she was when Sleeper bought her. The plaintiff did not accept the offer, but went away expressing an intention to get the cow and drive her to the defendant the next day. *Held* that this was no sale and no agreement binding on either party in respect to the cow; and the plaintiff's buying the cow and driving her to defendant's yard the next day, in the defendant's absence, and notifying defendant's wife what he had done, imposed no obligation on the defendant in order to prevent liability for the cow. And *held* that under the circumstances of the case, it should have been left to the jury to find whether the conversation was intended and understood to be merely jocose and not in earnest.

ASSUMPSIT.  Plea, the general issue.  Trial by jury, June term, 1870, STEELE, J., presiding.  Verdict for plaintiff.

Some three weeks before January 28, 1869, the defendant exchanged cows with one Sleeper.  This led to litigation br ween them.  On the 28th January, 1869, while that litigation vas pending, the plaintiff, who was working at Sleeper's, met defendant and entered into conversation about the cow transaction, and remarked that both cows were not worth $35.  The plaintiff's evidence tended to prove that defendant insisted the cow he let Sleeper have was worth $40, and told plaintiff he would give him that for her if he would deliver her to him in as good condition as she was in when Sleeper bought her ; that witness was called to the offer, and plaintiff went away expressing his intention to get the cow and drive her to the defendant the next day.  Plaintiff then proceeded to Sleeper's, bought the cow for $15, and the next morning, January 29, 1869, drove her to defendant's and put her in defendant's barn-yard, and notified defendant's wife what he had done, the defendant himself being absent.  The defendant, on his return home that day, learned what was done, and, after eating his dinner, drove over to the house where the father of the plaintiff lived.  Defendant did not find plaintiff there, but did find plaintiff's father, and notified him he should not accept

21

the cow, and that he wanted plaintiff to take her away, and requested him to inform plaintiff when he should see him. Defendant was informed by plaintiff's father that he didn't expect to see plaintiff for a week. Plaintiff usually lived with his father, but was then working for Sleeper. Plaintiff's evidence tended to prove that plaintiff's father told defendant his son was at Mr. Sleeper's, who lived in the vicinity. Defendant's evidence tended to show that no such information was given him, and that he did not know where to look for plaintiff. Defendant did not see plaintiff till he met him at the justice court between him and Sleeper, February 3, 1869. Defendant then notified plaintiff he should not take the cow. Plaintiff's evidence tended to prove that the cow was in as good condition when driven to plaintiff's as when Sleeper bought her. Defendant's evidence tended to prove the contrary. The defendant insisted that the contract was within the statute of frauds. The court ruled, and told the jury, that plaintiff could not recover unless defendant accepted the cow ; that it was defendant's duty to do all that was reasonable and practicable to notify plaintiff that he declined to accept her, and if he had waited till February 3d before endeavoring to notify him, the delay would have amounted to an acceptance. But as he did not wait, but proceeded to plaintiff's father's, to see plaintiff and notify him, the question was, what information he received there. If such as he claimed, then he was guilty of no *laches*, as he would not know where to look for the plaintiff for a week, and he saw plaintiff and notified him within that time. On the other hand, if defendant there learned he could find plaintiff at Sleeper's, (where he actually was,) and instead of going or sending to Sleeper's, waited till February 3d before notifying plaintiff of his non-acceptance, the delay would amount to an acceptance of the property, and defendant would be liable. To all which ruling and instructions the defendant excepted.

There was no claim that the defendant learned anything about the condition of the cow, more than what appeared when plaintiff brought, and defendant first saw her. The plaintiff sued defendant February 3d, 1869. The defendant since then has fattened and killed the cow, and sold and used the beef. The defendant

requested the court to instruct the jury that if the offer of the defendant to plaintiff was intended and understood to be merely jocose and not in earnest,. then plaintiff could not recover. The court declined to comply with this request, on the ground that there was no evidence to warrant it, to which the defendant excepted.

*Ross & Smith*, for the defendant.

*George C.* and *George W. Cahoon*, for the plaintiff.

The opinion of the court was delivered by

WHEELER, J.    The offer of the defendant, upon which the plaintiff relies, was to give the plaintiff forty dollars for the cow if he would deliver her to the defendant in as good condition as she was in when Sleeper bought her. The plaintiff did not then own the cow, and both parties knew that he did not own her. The plaintiff did not accept the offer, but went away expressing an intention to get the cow and drive her to the defendant the next day. If the plaintiff had then accepted the offer, it would not have been a sale of the cow, for the plaintiff did not then have the cow to sell. It would have been an agreement, on the part of the plaintiff, to procure the cow and deliver her to the defendant, in as good condition as she was in when Sleeper bought her ; and an agreement on the part of the defendant to pay him forty dollars for doing so. But the plaintiff did not accept the offer so as to bind himself to that agreement, therefore the defendant was not bound to his offer. An offer, unaccepted, is not a contract ; in such cases both parties must be bound or neither is. When the parties separated nothing had taken place to impose any obligation upon either, with reference to the cow, until they should meet again, and, upon the facts found, both must so have understood it. The defendant's offer was, to give the plaintiff forty dollars for the cow, if he would deliver her to him in a certain condition ; not to give him that sum if he would deliver her in the defendant's yard in that condition. This implied that a personal meeting was to be had for the delivery of the cow and pay-

ment of the price ; and if the plaintiff had accepted the offer so as to have made a contract upon it, a delivery of the cow in the defendant's yard would not have been a performance on the plaintiff's part that would have entitled him to claim that the defendant should perform on his part. When the plaintiff left the cow in the defendant's yard, it was not done in pursuance of any. agreement, and the defendant was not bound to take any action with reference to her to prevent liability for her. Suffering the cow to remain in the yard did not bind any agreement, for there was no agreement to be bound. The court below seems to have held that the facts found made a contract of sale, and that the defendant, by permitting the cow to remain in his yard, without using due diligence to. notify the plaintiff that he did not accept her on the contract, so far accepted her that this acceptance bound the contract and made him liable for the price. In this we think there was error.

The defendant and Sleeper were in litigation about the cow, and the plaintiff was in the employment of Sleeper at the time when the parties met. Their conversation commenced in the way of bantering between them about the importance of that litigation, and not in the way of making a trade in the usual course of business. From the testimony referred to, it appears that some of the witnesses, who were there and heard the conversation, when asked whether the conversation was serious or not, answered that they could not tell, but could tell what was said. We think that the circumstances and this testimony did tend to show that the defendant's offer was intended and understood to be merely jocose, and not in earnest, and that the court erred in not submitting to the jury to find how the parties, in fact, intended and understood it, in that respect.

For these reasons the judgment is reversed, and the cause remanded.