## WOODS v FIFTH-THIRD UNION TR CO

Ohio Appeals, 1st Dist, Hamilton Co

No 5093. Decided July 6, 1936

John W. Cowell, Cincinnati. and Claribel Ratterman, Cincinnati, for appellant.

John M. McCaslin, Cincinnati. and Joe W. O'Hara, Cincinnati, for appellee.

## OPINION

By MATTHEWS. J.

This is an appeal on questions of law from the Court of Common Pleas of Hamilton County.

The appellant was the son of Susan L. B. Woods and filed this action against the executor of her last will to recover for personal services rendered by him during the six years immediately preceding her death.

The decedent during that time lived at the Alms Hotel and the appellant lived with his family about one mile distant therefrom. The services so far as the evidence shows consisted in personal attention and in assisting her in managing her property, consisting apparently of securities of the value of about $80,000.00.

At the close of the plaintiff's evidence the court sustained the defendant's motion for an instructed verdict. The court overruled the plaintiff's motion for a new trial and entered judgment on the verdict.

The appeal presents for determination the question of whether the court erred in sustaining the motion for an instructed verdict.

We are of opinion that no promise implied in law or fact arises from the performance of personal services by a son for the benefit of his mother regard'ess of whether they are living together as a part of the same household. The relation of parent and child is so close that the implication is that whatever service one renders to the other is without any expectation of compensation by the one rendering the service.

The common experience of mankind is that a son in rendering such service d es it because of the moral duty which he owes to his mother.

While a son owes no legal duty to perform gratuitous personal service for his mother who is financially able to pay, it is commonly recognized that the performance of such service springs from other motives than the desire for material gain. There are duties of imperfect obligation not enforceable at law that govern the relation of parent and child in such matters. Personal attention and service rendered by one to the other usually result from the recognition of such duties or from the sheer desire to be of service, and not for the purpose of creating a legal obligation. Therefore, the implication is that there was no intention to create a legal obligation by words and acts passing between them.

No implied promise arising by the performance on the one hand and the receipt of the benefit thereof on the other, there must be additional evidence of an intention to contract if a legal obligation to compen-

sate is to attach. There must be an express promise made under such circumstances as to manifest an intention of contracting. And it is not sufficient that the evidence of such a promise is such that reasonable minds could reasonably draw different conclusions therefrom ·on the subject, which is the general rule in the ordinary civil action as decided in the case of **Hamden Lodge v The Ohio Fuel Gas Co., 127 Oh St, 469.** In this sort of a case the evidence of a promise made under such circumstances as to manifest an intention to contract must be clear and convincing. **Hinkle v Sage, 67 Oh St, 256; Merrick v Ditzler, 91 Oh St, 256.**

Now what is the evidence of an express promise made with the intention of assuming a legal obligation to pay for these personal services?

One witness testified that she had heard testatrix say that her son "was to be paid for his services"; another said that he had heard her say that "her son John was taking care of her business and that he would be paid for his services." Three witnesses testified that they had heard the testatrix say to her son, the plaintiff, when he did things for her "that she would pay him for everything he did." And this was all the evidence on that subject.

Now considering the surrounding circumstances, can it be said as a matter of law that this is not clear and convincing evidence?

Promissory language does not under all circumstances manifest an intent to contract. In 1 Williston on Contracts (Revised Ed.) pages 36 and 37, it is said:

"Consequently, if both parties indicate that their words are merely in joke, no contract will be formed. So where words appropriate to an offer are used evidently merely as a boast or explosion of wrath so that no reasonable person would be justified in taking them literally, no contract will result from an acceptance. But if, under the circumstances, a reasonable person would understand the words used as importing that the speaker promised to do something if given a requested exchange therefor, it is immaterial what intention the offeror may have had."

In New York Trust Co. v Island Oil & Transport Co., 34 Fed. (2d.) 655, the court at 655 and 656 said:

"However, the form of utterance chosen is never final; it is always possible to show that the parties did not intend to perform what they said they would, as, for example, that the transaction was a joke (Keller v Holderman, 11 Mich. 248, 83 Am. Dec. 737; McClurg v Terry, 21 N. J. Eq. 225; Theiss v Weiss, 166 Pa. 9, 20, 31 A. 63, 45 Am. St. Rep. 638; Bruce v Bishop, 43 Vt. 161); or that it arose in relations between the members of a family which forbade it (Earle v Rice, 111 Mass. 17; Bundy v Hyde, 50 N. H. 116). It is quite true that contracts depend upon the meaning which the law imputes to the utterances, not upon what the parties actually intended; but, in ascertaining what meaning to impute, the circumstances in which the words are used is always relevant and usually indispensable. The standard is what a normally constituted person would have understood them to mean, when used in their actual setting."

Of ·course, if a reasonable person would understand the words used as importing a promise with contractual intent to do something, the secret intent of the person uttering the words would be of no legal significance. But in determining whether a reasonable person would so understand the words, all the circumstances must be taken into consideration.

We have here words used by a mother to her son. She needed his attention and had natural claims to it. She had an estate and unless she provided otherwise by will he would inherit half of it. She had a complete legal right to entirely disinherit him and his neglect of her might have caused her to exercise that right.

She stated on many occasions that he would be paid or that she would pay him for everything he did. Did that language clearly and convincingly indicate any particular mode of compensation? Did it indicate contractual and not testamentary provision or the benefit he would receive on intestacy? According to all the dictionaries, there is no specific method necessarily conveyed in the meaning of the word "pay." The only essential meaning conveyed is that of recompense or compensation. The duty discharged may be either a legal or moral one. Illustrating the meaning Webster says "Hence, to compensate justly; to requite according to merit; to reward or punish as required; to retort or retaliate on."

It seems to us clear as a matter of law that the use of such language by a mother to her son under the circumstances cannot be said to prove a contract between

them by clear and convincing evidence. It proves an intention "to requite according to merit; to reward or punish as required." The intent disclosed by such language is fully satisfied by adequate provision in a will. That the son did not regard it as a contract requiring satisfaction during the mother's lifetime is demonstrated by the fact that no demand was ever made by him during her lifetime and the claim now asserted extends over the entire period allowed by the statute of limitations. If a contract existed he allowed half of his claim to become barred by lapse of time.

With reference to such language between members of a family, this court in **Arns, Exr. v Disser, 40 Oh Ap, 163** at 167; said:

"Giving the declarations here their full force and effect, they are but expressions of gratitude, and an intention to do something for Disser, all of which she did by deeding him the blacksmith shop property and providing the bequest for him in the first will she executed—though she later revoked this bequest—and in furnishing him a home with free board.

"We are unable to find any expression or conduct that would furnish clear and convincing proof of an express contract on the part of Disser to perform the services for compensation, or on the part of Mrs. Arns, when accepting the services, that she was to pay for them."

In the case at bar the evidence shows that the plaintiff received far more by the provisions of the will than the amount claimed. It is true that his sister was given one-half of the estate. That fact does not in any way detract from the fact that he was given more than his claim. The motives for the testamentary provisions are immaterial, as is also a comparison of them.

For these reasons, the judgment is affirmed.

ROSS, PJ, and HAMILTON, J. concur.