## FLAX v WILLIAMS

Ohio Appeals, 2nd Dist, Fayette Co

No 233. Decided Dec 7, 1937

Maddox & Maddox, Washington Court House, for plaintiff-appellee.

Troy T. Junk, Washington Court House, for defendant-appellant.

## OPINION

By BARNES, PJ.

The above-entitled cause is now being determined on proceedings in error through defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Fayette County, Ohio.

Plaintiff's petition was filed in the Common Pleas Court on April 21, 1937. The action was for services alleged to have been rendered for the decedent Anna B. Flax, at her instance and request, and for which the decedent agreed to pay the reasonable value for said services. The time of service was alleged to have been from April 1, 1929 to June 1, 1936, less fourteen weeks, one and one-half days' absence in January, 1930, January, 1931, January 5 to May 27, 1932, inclusive, in all 355 weeks. The nature of the services was alleged to have been nursing, care, attention and general work rendered for the decedent. The reasonable value of the services was claimed to be $10.00 per week, making a total of $3550.00. The petition also alleges the presentation of the claim to the administrator and demand for its allowance on the 24th day of August, 1936, and that on said date the claim was rejected.

The amended answer of the defendant, after making certain admissions as to the appointment and qualifications of the administrator of the estate of Anna B. Flax, deceased, the presentation and rejection of the claim, then follows with a specific and general denial. The answer further averred that plaintiff was a son of the decedent, Anna B. Flax, and that during the time stated in plaintiff's petition he resided with his mother, Anna B. Flax, at her home in Jeffersonville, Fayette County, Ohio, and, further, that during the whole of said period was a member of the mother's household, residing with her as a member of

682

the family and that any services rendered during said period were voluntarily rendered and for the common benefit of himself and members of decedent's household. The amended answer contains the further averment that any services which may have been rendered by plaintiff were not rendered by or in pursuance of any contract or agreement with decedent that plaintiff should receive pay therefor; that during all of said times decedent provided a home and paid all household or family expenses and at her own expense provided everything necessary or required for the support and comfort of the members of her household, including plaintiff; that during the time mentioned in the petition plaintiff received his board and lodging and all other necessities from said decedent and at her expense. ·

Plaintiff, in his reply, admitted that he was a son of the decedent and that during the period named he remained in the home of his mother; denied that he was a member of decedent's family during that time; denies that the services which he rendered were voluntarily rendered or for the common benefit of himself and members of decedent's household; denies that decedent did not agree to pay plaintiff for the services rendered. Plaintiff admits that during the period decedent had a home of her own and during the time said services were rendered furnished plaintiff with board and lodging. The reply contains other allegations not essential to the determination of the claimed errors.

The case was tried to a jury on the 19th day of March, 1937, and a verdict was returned, signed by all twelve members, finding for the plaintiff and assessing the amount at $1292.29. Motion for new trial was duly filed, afterwards overruled and judgment entered on the verdict for the amount set forth therein.

Appellant presents, under his assignment of errors, the following:

1. Said court erred in overruling the motion of appellant for a new trial.

2. Said court erred in its charge to the jury on the trial of said action.

3. Said court erred in overruling the motion of appellant for judgment upon the opening statement of counsel for appellee.

4. Said court erred in overruling the motion of appellant for a directed verdict, made at the conclusion of the evidence of appellee.

5. Said court erred in overruling the motion of appellant for a directed verdict made at the conclusion of all the evidence and before argument of counsel.

6. The court erred in admitting and excluding evidence to which objection was made by appellant at the time said errors were committed.

7. Said judgment was contrary to law and the evidence.

8. Said judgment was given for appellee, when it ought to have been given for appellant.

The case was tried on the theory that the principles of law announced in Hinkle et, Executors v Sage, 67 Oh St 256, as modified by Merrick v Ditzler, 91 Oh St 256, were controlling. The briefs of counsel filed in our court present the same theory of law. Syllabi 1 and 2 in the case of Hinkle, Executor v Sage, supra, read as follows:

"1. In an action to recover compensation for services, when it appears that the plaintiff was a member of the family of the person for whom the services were rendered, no obligation to pay for the services will be implied; and the plaintiff cannot recover in such case unless it be established that there was an express contract upon the one side to perform the services for compensation, and upon the other side to accept the services and pay for them.

"2. Such contract may be in writing or it may rest entirely in parol, and it may be proved by direct or indirect evidence; but to entitle the plaintiff to recover, the contract must be established by clear and unequivocal proof."

In the case of Merrick v Ditzler, supra, syllabi 1 and 2 are identical in substance with that in the Hinkle case, supra, except that the word "unequivocal" is changed to "convincing." In the latter case the Supreme Court expressly distinguishes the Hinkle case in the above particulars.

Subsequent decisions of the courts of our state disclose that it is now accepted that in actions of this character the contract must be established by clear and convincing proof.

In taking up the claimed errors in chronological order, the first arises on the claimed errors of the court in refusing to sustain defendant's motion to direct a verdict immediately following the trial statement of counsel for the plaintiff. This procedure is recognized in a proper case, the leading authority being the case of Cornell

v **Morrison**, 87 Oh St 215. We have examined the entire statement as presented through the bill of exceptions. Counsel for plaintiff closed his trial statement with the following:

"I think in a summary way those substantially are the facts of the claims in our petition and we expect the evidence to support each and every material allegation that is contained therein."

Regardless of what may have been said previously, we hold that this brings into the trial statement by reference the allegations of the petition and if a cause of action is stated therein error would not lie to a refusal of the trial court to direct a verdict. This rule may have its exceptions but if so, they would not avail in the instant case, since there was no claim of inconsistency but merely omissions in the trial statement to make the stated case as broad as the petition. Even if this reference to the petition had not been made, we doubt very much if the trial statement contains such infirmities as would warrant a directed verdict. The decisions are agreed that courts should be very cautious in granting directed verdicts on trial statements.

Furthermore, we know of no precedent determining it to be prejudicial error when a trial court overrules the motion for a directed verdict at the close of the trial statement and the case proceeds to a verdict of the jury and final judgment. In other words, if the verdict and judgment are proper under the pleadings and the evidence, a reviewing court should never reverse for infirmities in the trial statement.

The claim is also made that the trial court erred in admission of certain testimony offered by counsel for plaintiff. Specifically, the brief calls attention to a certain letter written by the decedent, dated March 28, 1929, directed to the plaintiff at his then residence in Asheville, North Carolina, requesting Lester to come home and help her out. We hold that this evidence was competent and properly admitted. The contents of this letter and the attending circumstances will be referred to later.

Claim is also made that the trial court erred in its general charge. We have examined the entire charge and think it is a model in its phraseology and correctly states the law. The specific error complained of is the failure of the trial court to give a definition of the words, "clear and convincing proof." This is the only complaint that is made as to the charge. At the completion of the charge the trial court made the usual inquiry, as follows: "Is there anything counsel have to suggest that the court has overlooked or omitted, or any corrections?" From an addendum attached it appears that counsel approached the court and had a colloquy not in the hearing of the jury or the court reporter. This addendum is added by the court to the bill of exceptions from his recollection: "Thereupon, counsel for the respective parties came to the bench and, without the hearing of the jury and court reporter, counsel for defendant made certain inquiries, one of which in substance was "Did the court define the term clear and convincing proof?" The court stated that he had not. Counsel then said in substance 'I think that term ought to be defined.' After a brief discussion the court said to counsel for defendant 'If you have a definition I will give it to the jury,' to which counsel replied 'I do not have any or do not know of any'."

Counsel for appellant calls attention to the case of **Schulte, Executor v Hagemeyer, 16 Oh Ap 1.** The second sylabus of this case reads as follows:

"2. The failure of the trial court, in its general charge to the jury, in defining clear and convincing evidence, to state that it is the highest degree of proof available in civil cases, is an omission to fully charge on the question, but since the objecting counsel neither requested the trial court to include this language nor called its attention to the law on the subject he cannot complain of such error in a reviewing court."

We doubt very much if under a proper case we would go as far as did the Court of Appeals of Hamilton County in promulgating a rule of law that the failure of the trial court to define clear and convincing evidence as being the highest degree of proof available in civil cases is an omission to fully charge on the issues. It seems to us that very little is added to the definition of clear and convincing evidence by stating that it is the highest degree of proof available in civil cases. But even if this rule of law is to be followed it still will appear in the instant case that the error is one of omission but not of com-

mission and counsel's general request without specifying the addition to be made to the charge, would not present prejudicial error. The trial court signified its willingness to give a definition if counsel would furnish it. This request was not complied with.

We find no error in the charge of the court.

The remaining errors may all be presented under the claim that the verdict is contrary to the evidence and the law and required a final judgment for the defendant.

Counsel for the appellant preserved his question throughout the trial and if his theory of the case is to be accepted, final judgment would follow. The record, in the light of the law, presents a most difficult problem. We find no difficulty in determining that the law is well defined in actions of this character. The difficulty arises in its application to the peculiar facts of this case. It rarely if ever occurs that two cases are exactly alike. It is the distinguishing facts that make necessary the determination as to whether or not an express contract is proven to the degree of certainty required under the law.

The following essential facts are necessary to a complete understanding of the instant case: .

The decedent, Mrs. Anna B. Flax, was a widow, living on a farm of 105 acres, near Jeffersonville, Fayette County, and at the time of her death, in June, 1936, was eighty-four years of age. The title of the farm was originally in the name of her deceased husband, who had died many years previous. At the times enumerated there were living seven children of the decedent, four girls and three boys. Two of the boys never married, being the son Jacob and the plaintiff, Lester.

Following the death of the decedent's husband all the children joined in a deed conveying the farm to her during the period of her natural life. At the time of bringing the action in this case the plaintiff, Lester Flax, was approximately fifty-two years of age. He had left home twenty-two years previous, going out into the world to make his own way. He worked in banks in a number of distant cities, to-wit, Lima, Washington Court House, Akron, Columbus and others. For about ten years previous to 1929 he had been located in Asheville, North Carolina, originally going to that climate on account of his health.

During the greater part of this period his business was that of an accountant.

In 1929 the decedent, Mrs. Flax, because of her advanced years had arrived at a general physical condition where at least three of her daughters, living within driving distance, felt that their mother should not be left alone. From time to time they would secure a maid to stay in the home of the mother, but the three daughters continued to go from their own homes to the mother's. There was some difficulty in securing reliable help that would continue in employment. The time finally arrived when the three daughters would take week about remaining with the mother day and night, for which services the mother paid $5.00 per week. There is evidence in the record that the daughters talked over the proposition of writing to Lester and having him come home so that they would be relieved from the obligation of leaving their own homes and remaining a week at a time with the mother. On March 28, one of the daughters suggested to her mother that she owed Lester a letter and through this suggestion the mother started to write a letter. The first seven lines of the letter read as follows:

"Dear Lester: I do not seem to get much stronger. I wish you could come up this spring and help me out."

Immediately following, the daughter adds to the letter, as follows:

"Lester, Ma cannot collect her thoughts this morning but this is enough to show you she wants you to come home."

Then appears in the admitted handwriting of the decedent the following: "Love. Ma."

The envelope and letter were presented in evidence and admitted under Exhibits A and B. The envelope is postmarked Jeffersonville, Ohio, March 28, 1929, and was addressed to Mr. Lester M. Flax, Asheville, North Carolina, Box 461. A few days later, on April 1, 1929, the son Lester returned to the home of his mother and remained with her continuously, with the exception of a few weeks, until the time of her death in June, 1936. After about thirteen months Miss Lucille Stirr was employed as a servant in the home at a compensation of $5.00 a week. For a period of a year or more preceding Mrs. Flax's death the compensation of Miss Stirr was increased to $6.00 per week. The undisputed evidence is that Miss Stirr was a very capable and reliable

servant in the home. During the last three or four years of her life Mrs. Flax required a great deal of attention, even to the point of not being able to feed herself, nor could she walk without assistance. She lost control of her organs of elimination and thereby frequent bathing was required and likewise frequent changing of the bed. The evidence disclosed that Lester helped with this work. The extent of it can best be understood by the statement of Miss Stirr, who apparently was a disinterested witness. When asked who did this and who did that her general reply was that she and Lester worked together in whatever was to be done in the care of the mother. The amount of the verdict was at the rate of approximately $3.50 per week and in passing we might say that if the plaintiff is entitled to recover at all, the amount should not be questioned.

This brings us to the question as to whether or not the plaintiff proved by clear and convincing evidence that there was an express contract between him and his mother for compensation. It is admitted that he received no compensation except his board and lodging but there is some evidence that he owned and received the proceeds from the poultry.

In an action of this character the law is very positively stated that there can be no recovery except upon an express contract. The term "express contract" is distinguished from what is generally spoken of as an implied contract. It is the ordinary rule that where one performs services for another the law will imply an obligation to pay the reasonable value of such services. In situations such as in the instant case the implication of the law is just the opposite; that is, where a member of the family gives services in the absence of an express contract it is implied that they are voluntarily furnished without the intention of being paid for. The announcement of this rule in Ohio was first definitely set out in the case of Hinkle, Executor, v Sage, supra. In this case Judge Davis, speaking for the court, at page 262 of the opinion, makes the following comment:

"Cases of this kind are odious and are not favored by the courts because they afford opportunity for fraud against the estate of deceased persons and great temptation to perjury, by disappointed or avaricious relatives."

The statutory law of Ohio further throws a protection around estates in that it provides, among other things, that where the defendant is an executor or administrator, the plaintiff is prohibited from testifying. This statutory enactment was applicable and invoked in the instant case. The plaintiff, Lester Flax, took the stand for the purpose of being examined as a witness by his counsel. He was permitted to tell his name, age and relationship to the decedent, after which an objection was interposed to his giving further testimony, and the trial court correctly ruled that under the statute he could not testify.

Before going to the evidence, if any, which may support the record of an express contract, let us look to the syllabi of the two cases, Hinkle v Sage, supra, and Merrick v Ditzler, supra; so as to have a better understanding as to the exact requirements in the submission of proof.

In the second syllabus of each of the two cases the Supreme Court, having referred in the first syllabus to the requisite of an express contract, makes these further observations:

"Such contract may be in writing or it may rest entirely in parol."

The quoted part of this syllabus is readily understood. We do not understand from the above language that it must rest entirely in writing or entirely in parol. We do not think that it can be questioned by any court that the evidence supporting an express contract may be partly in writing and partly in parol.

The next part of this syllabus 2 reads:

"and it may be proved by direct or indirect evidence;"

The term "direct evidence" is well understood. It means a narrative of existing facts or conditions directly bearing on the existence of an express contract. The term "indirect evidence" is not so frequently used. In 17 **Ohio Jurisprudence**, under the title of "Evidence," on page 38, §12, the writer of the text uses the following language:

"Evidence is either positive and direct, a recital of facts testified to by eye witnesses,—or circumstantial, a recital of facts or mere circumstances connecting one with the commission of an act. It is a well established principle of evidence that infer-

ence may be drawn from circumstantial evidence as well as from positive and direct evidence. In other words, the existence of any fact may be established by circumstantial evidence as well as by direct evidence, provided the circumstances shown fairly and reasonably warrant the conclusion reached, or that conclusion is the natural inference from the facts proved."

In Jones Commentaries on Evidence, second edition, Volume 1, §9, page 16, the text writer recognizes the terms "circumstantial evidence" and "indirect evidence" as being synonymous. Farther down on the same page he defines indirect evidence as follows:

"Indirect evidence is that which tends to establish the fact in dispute by proving another and which though true does not of itself conclusively establish the fact but which affords an inference or presumption of its existence."

· The remaining portion of the syllabus provides as follows:
"A contract must be established by clear and convincing proof."

The term "clear and convincing proof" is a higher degree of proof than is required under the ordinary rule of preponderance of the evidence. It is not as high a degree of proof as required in a criminal case, where guilt must be established beyond a reasonable doubt. One authority in this state has defined clear and convincing evidence as the highest degree of proof required in a civil action.

In addition to the two decisions of the Supreme Court (Hinkle v Sage and Merrick v Ditzler) we have been referred to other Ohio cases of this same general character.

In the case of Lemunyon v Newcomb, 120 Oh St 55, the Hinkle case, supra, and the Merrick case, supra, are referred to and approved. The claimant was asking for services rendered her deceased father through a claimed express contract. The jury returned a verdict in favor of the defendant and judgment was entered on the verdict. The case was carried to the Court of Appeals and later to the Supreme Court, where the judgment of the lower court was affirmed. The statement of the case fails to set out in any detail the nature of the evidence in support of plaintiff's claim of an express contract. The report does say that there was no written contract and no direct evidence offered other than the incompetent evidence of the daughter that the contract had been made. The further statement is made that plaintiff based her claim on the circumstances which it was urged compelled the conclusion of the jury that an express contract had been made. We are not advised of the nature or character of these circumstances.

We are also referred to the case of Woods v Trust Company, 7 Ohio Opinions 210; 22 Abs 549; 54 Oh Ap 303; 6 NE (2d) 987. This is a decision by the Court of Appeals of Hamilton County, Ohio, same being decided July 6, 1936. From the statement in this case it appears that Susan L. B. Woods lived at the Alms Hotel, Cincinnati, Ohio, and at her death left an estate of about $80,000.00. There were two children, neither living with Mrs. Woods. The plaintiff, John C. Woods, being a son, lived close enough to his mother that he was able to render services to her from time to time. The statement of the case fails to reveal that there was any evidence that the mother ever requested him to do anything for her. No such situation or inference would arise under the existing law that such service was not rendered voluntarily and without expectation of compensation. The claimant in the reported case sought to overcome this presumption by bringing evidence of witnesses who testified that they had heard the mother say on different occasions that she intended or expected or had arranged to pay the son for what he had done for her. Three witnesses testified that they had heard the decedent say to her son, the plaintiff, when he did things for her: "That she would pay him for everything he did." This was all the evidence on the subject.

To our minds the strongest evidence in this reported case supporting the claim was that of the three witnesses above quoted. However, when we analyze it it bears no other construction than an expressed intent of the mother to pay. This is not the equivalent of a contract to pay. At least, it would not support by clear and convincing evidence an express contract to pay. There was no evidence that Mrs. Woods requested his services. So far as the record disclosed, the son did these things voluntarily. Under this situation no inference of obligation to pay would arise; hence, when the mother made the statement, even to the son, that she intended to pay, it would be no more than a voluntary action on her part.

The next case cited is that of **Arns v Disser, 40 Oh Ap 163.** This is also a decision of the Court of Appeals of Hamilton County, the decision being rendered in February, 1931. This was an action by the claimant against the estate of Mrs. Arns for services claimed to have been rendered during decedent's lifetime. The plaintiff, Disser, was not a relative of Mrs. Arns but had lived in the family for approximately forty-five years, and the court determined that by reason of this condition he was brought under the provisions of the law applicable to members of the household. At page 165 of the opinion, the court states in substance the evidence under which the claim of contract was sought to be established consisted entirely of the narrative of several witnesses as to what the decedent had said to them as to what she intended to do. The court held that these statements were nothing more than expressions of gratitude and an intention to do something for the claimant, Disser. The statement is further made in the opinion that the decedent had complied with her expressed intention.

We are also referred to the case of **Scheetz, Administrator v Scheetz, 47 Oh Ap 37.** The claimant recovered in the Common Pleas Court and the judgment was reversed by the Court of Appeals. The opinion recites that the claimant was a member of his mother-in-law's family and hence could not recover for services in the absence of proof of an express contract. Apparently counsel for claimant was maintaining that the claimant was not a member of the household, and that the rule of express contract would not apply. We do not have sufficient statement of facts to ascertain whether or not the case was in any sense parallel to the instant case.

We have thoroughly examined and re-examined every authority cited and have, in addition, made an independent research seeking such aid as might be obtained from the reasoning of other courts. With this background we now come to apply the facts in the instant case to the existing well-defined law.

The first question to be determined is what evidence does plaintiff present supporting an expressed contract?

Ordinarily, we would expect the parties claiming a contract to produce evidence in narrative form stating the negotiations at the inception of the claimed agreement carried through to where the minds meet on a completed contract. We do and must recognize that in actions against an estate evidence of this character is rarely attainable, due to the fact that under the statute the plaintiff is precluded from testifying.

Of course, where there is a written contract the proof is readily presented. This is true also where a third person happens to be present through all the negotiations. What, if anything, do we have presented through the evidence in the instant case that distinguishes it from the reported cases heretofore referred to?

The claim is made that in the instant case the services of the son were solicited by the mother. The basis of this claim is the letter, dated March 28, 1929, and introduced in evidence as Exhibit B. Counsel for the administrator objects to this testimony very strenuously but we think the same was properly admitted. As we view it, his argument goes wholly to the question of its weight and not to its competency. The part of the letter which it is claimed supports plaintiff's theory of the services being solicited are the last four words of her writing: "and help me out." Any possible ambiguity in this is aided through the portion of the letter written by the daughter, wherein she says: "Ma cannot collect her thoughts this morning, but this is enough to show you she wants you to come home." Standing alone, it would not bear the construction of a solicitation for services; standing in connection with other attending circumstances it can properly be given such a construction. We refer to the circumstances disclosed in the evidence that the mother was paying the daughter $5.00 per week and the further evidence that the daughters, by reason of their obligation to their own homes, were not in position to perform this service without great inconvenience. There is also the further circumstance that this son, Lester, had been away from home twenty-two years and thereby had removed himself from being a member of the household. Other circumstances would further support that the mother was wanting Lester to come home to help take care of her. However, this standing alone would not warrant the conclusion that she expected to pay for such service, nor would his compliance with the request within three or four days lead to the conclusion that at that time he was expecting to be paid. However, after he did return to his mother's home there is evidence presented that the mother stated to the son that he would be paid. There is also evidence that he replied: "All right, Mother, you can pay me any time." It is at once apparent that the

facts of the instant case present a much stronger case for the claimant than do the reported cases. We have in the instant case the request to come home and help out, which as heretofore illustrated, under the existing circumstances might properly be determined to be a request for services. Similar to the reported cases we have the expression made to plaintiff in the presence of other witnesses that the son was to be paid. Unlike the other cases, we have the additional evidence that the son responds to that proffer of payment: "All right, Mother, you can pay me any time." This would clearly demonstrate that the son was not performing the services voluntarily and clearly indicates to the mother that he was expecting pay. We think that the direct and indirect evidence in the instant case will support plaintiff's theory of an express contract. Of course, we must consider in this case the requirement that the proof must establish such express contract by clear and convincing evidence. This rule of proof under the law does not remove from the case the usual requirements that factual questions are for the determination of the jury. The jury was properly charged and their attention was called to the fact that in this case the law imposed a higher degree of proof. We are unable to say that under all the facts and circumstances the jury was not warranted in arriving at the conlusion it did.

The judgment of the lower court will be affirmed and the cause remanded for further proceedings. Costs will be awarded against the appellant. Exceptions will be allowed.

HORNBECK and GEIGER, JJ, concur.