WEINSTEIN, APPELLEE, *v.* NEWMAN, APPELLANT.

(No. 7332—Decided January 8, 1951.)

*Messrs. Rendigs, Fry & Kiely* and *Mr. Robert M. Dennis,* for appellee.
*Mr. Stewart S. Cooper,* for appellant.

MATTHEWS, J. The plaintiff-appellee describes this action, in which he obtained a judgment from which the defendant-appellant took this appeal, as one "in *quantum meruit* on an implied contract for the reasonable value of services rendered by the plaintiff, a real estate broker who was orally requested by the defendant to procure a certain parcel of real estate for him."

The plaintiff testified that the defendant expressly promised to pay him for his services, but there was no evidence as to any agreement as to the amount of compensation.

The defendant denied that he had entered into any contract with the plaintiff. By way of explanation of his denial he testified that he bought and sold real estate; that he and the plaintiff were business and social friends, having been acquainted for about 25 years; that they were accustomed to consult about real estate matters and assist each other in their business transactions, as a matter of friendship, without receiving or expecting to receive any compensation; and that the service which the plaintiff performed in this instance was of the same kind and under similar circumstances as the gratuitous services theretofore performed. Defendant denied that he had ever promised to pay the plaintiff and that plaintiff had ever demanded any compensation until a disagreement developed between them in another transaction having no relation to this one.

The defendant's evidence tended to prove such denial.

There was a wide divergence between the evidence of the plaintiff and that of the defendant, as to the facts and circumstances surrounding the service performed by the plaintiff, the inferences to be drawn therefrom, and the intention of the parties as disclosed thereby.

In submitting the cause to the jury, the court treated it as one in which the plaintiff was suing to recover a commission for procuring a purchaser of real estate. The controversy does not fall in that category. The defendant was not an owner seeking a purchaser. He was the purchaser and the plaintiff admits that the defendant had been negotiating through another real

estate broker. According to the defendant, all the plaintiff did was to go with him to the home of one of the co-owners and prevent the owners from taking advantage of his illiteracy. There was a general exception to the charge, but whether the error was one of commission and so prejudicial as to require a reversal on that ground we do not determine. However, as we are obliged to reverse the judgment on another ground, necessitating a new trial, we call attention to it so that the error will not be repeated.

The error which requires a reversal is found in the special charge which the plaintiff requested and which the court gave. This special charge is as follows:

"I charge you that if you find, by a preponderance of the evidence, that the plaintiff, Maurice L. Weinstein, was orally requested by the defendant, Jacob Newman, to procure certain real estate, and if you find that he thereafter did procure said property, then you must find for the plaintiff, Maurice L. Weinstein, in an amount that will adequately and reasonably compensate him for the services he rendered the defendant.

"In the absence of a specific agreement to the contrary, the law implies an agreement to pay what the services are reasonably worth."

In determining the validity of this special charge, it must be kept in mind that the issue raised in this case is whether an actual contract was entered into by these parties. It is not a case in which a duty to pay is imposed by law, which, because of the rigidity of forms of actions at common law, was enforceable in an action *ex contractu* notwithstanding no contract had been intended by the parties—even though the idea of agreement was entirely repugnant to their intent. In this case there must have been an intent to agree and an actual meeting of the minds, otherwise the defendant was under no obligation to the plaintiff.

The existence of this meeting of the minds with the intent to create an obligation is a fundamental principle in the law of contracts.

In 4 American Jurisprudence, 499, Section 9, it is stated:

"As ordinarily understood, the only difference between an express contract and a contract implied in fact is that in the former the parties arrive at their agreement by words, either oral or written, sealed or unsealed, while in the latter their agreement is arrived at by a consideration of their acts and conduct. In both of these cases there is, in fact, a contract existing between the parties, the only difference being in the character of evidence necessary to establish it. To constitute either the one or the other the parties must occupy toward each other a contract status, and there must be that connection, mutuality of will, and interaction of parties, generally expressed, though not very clearly, by the term 'privity.' Without this a contract by implication is quite impossible. It follows that assumpsit will not lie where there is a spontaneous service as an act of kindness, and no request, or where the circumstances account for the transaction on some ground more probable than that of a promise of recompense, for no promise will be implied, and the contract connection is not established."

In *Price* v. *Cleveland Trust Co.*, 45 Ohio Law Abs., 606, 68 N. E. (2d), 133, it is stated in the opinion:

"Any true contract exists as an obligation because the parties to it have willed, in circumstances to which there is attached in law the sanction of an obligation, that they shall be bound. This is true of both express contracts and those implied in fact."

It is stated somewhat differently, but with the same meaning, in 12 American Jurisprudence, 501, 502, Section 5:

"A promise to pay for services can, however, only be implied when they are rendered in such circumstances as authorized the party performing to entertain a reasonable expectation of their payment by the party benefited. The service or other benefit must not be given as a gratuity or without expectation of payment, and the person benefited must do something from which his promise to pay may be fairly inferred."

The decision in *Potter* v. *Carpenter,* 76 N. Y., 157, as summarized in the syllabus, is:

"Where it appeared, and was found, that the parties were in the habit of rendering mutual services to each other without any agreement as to payment, and that although, during the time, they had pecuniary transactions to a considerable amount, their services were not brought, or intended to be brought, into their accounts, a promise to pay cannot be implied, and the services will be regarded as matters of mutual accommodation, for which neither party intended to make any charge against the other; and this, although it is found that they did not suppose one service was equal to, or was to be setoff against the other." See, also, *Gross* v. *Cadwell,* 4 Wash., 670, 30 P., 1052.

The case of *Columbus, Hocking Valley & Toledo Ry. Co.* v. *Gaffney,* 65 Ohio St., 104, 61 N. E., 152, sheds much light upon this subject. For that reason we quote the entire syllabus:

"1. The meeting of the minds of parties upon its terms is necessary to the making of a contract; and this is so whether it be an express contract or an implied one, if, in the latter case, the contract to be proved is an actual one as distinguished from a constructive contract.

"2. Where it is shown, or admitted, that a party performing services, that should have been performed by another, had no intention at the time to claim com-

pensation, and did not expect to receive any from the other, no recovery therefor can be had upon a *quantum meruit* against the party for whom the work was done.

"3. Where it is averred in a petition that the plaintiff performed services for the defendant 'at his instance and request,' the averment may be supported by evidence of the circumstances under which the services were performed tending to show a contract; evidence of an express request is not required." See, also, *Carlson* v. *Krantz*, 172 Minn., 242, 214 N. W., 928, 54 A. L. R., 545.

The fact that the services were performed on request does not under all circumstances impose an obligation to pay. It is said in the third paragraph of the A. L. R. headnote to *Robinette* v. *Hubbard Coal Mining Co.*, 88 W. Va., 514, 107 S. E., 285, 25 A. L. R., 212, that "the mere request for the additional service, in the absence of an express agreement in regard thereto, generally does not justify the inference of an offer to pay anything in addition to the compensation specified in the original contract, it being assumed that the extra services were requested and performed as an incident of the employment."

Even where promissory words are used by the parties, they do not under all circumstances create contractual obligations. We had such a case before us in *Woods* v. *Fifth-Third Union Trust Co., Exr. and Trustee,* 54 Ohio App., 303, 62 N. E. (2d), 987. The promissory words were uttered by a mother to her son. In holding that under the circumstances there was no intent to contract, we quoted from *New York Trust Co.* v. *Island Oil & Transport Corp.,* 34 F. (2d), 655, 656, the following passage, which we think pertinent here:

" 'However, the form of utterance chosen is never final; it is always possible to show that the parties did not intend to perform what they said they would, as,

for example, that the transaction was a joke (*Keller* v. *Holderman*, 11 Mich., 248, 83 Am. Dec., 737; *McClurg* v. *Terry*, 21 N. J. Eq., 225; *Theiss* v. *Weiss*, 166 Pa., 9, 20, 31 A., 63, 45 Am. St. Rep., 638; *Bruce* v. *Bishop*, 43 Vt., 161); or that it arose in relations between the members of a family which forbade it (*Earle* v. *Rice*, 111 Mass., 17; *Bundy* v. *Hyde*, 50 N. H., 116). It is quite true that contracts depend upon the meaning which the law imputes to the utterances, not upon what the parties actually intended; but, in ascertaining what meaning to impute, the circumstances in which the words are used are always relevant and usually indispensable. The standard is what a normally constituted person would have understood them to mean, when used in their actual setting.' "

In the instant case, in the first paragraph of the special charge, the jury was instructed that if the defendant requested the plaintiff to procure the real estate and the plaintiff did procure the real estate then it "must find for the plaintiff" in an amount that would reasonably compensate him for his services. This instruction required the jury to entirely disregard the facts and circumstances, surrounding the defendant's request, tending to prove that the plaintiff as a reasonable man would not have thought that the defendant intended to pay for the services requested. The charge imposed a liability regardless of the intent of the parties and, therefore, was intrinsically erroneous.

In the second paragraph of the charge, the jury was instructed that in the absence of a specific agreement to the contrary the law implies an agreement to pay what the services are reasonably worth. The vice in this instruction is that it ignores the denial of the defendant that there was any contract. Taken in conjunction with the entire special charge, it, in effect, is

a statement to the jury that the only way the defendant could escape liability was by proof of a specific agreement on the subject.

There are cases, such as *Hinkle et al., Exrs.,* v. *Sage,* 67 Ohio St., 256, 65 N. E., 999, and *Merrick* v. *Ditzler,* 91 Ohio St., 256, 110 N. E., 493, holding that where a family relationship exists between the parties and the services rendered are the kind rendered by a member of a family, no liability exists in the absence of an express contract to pay. However, this charge declares not that it takes an express contract to impose a liability, but that it takes a specific or actual agreement to the contrary to avoid or limit liability. We have been cited to no case so holding. We have found none.

Our conclusion is that the second paragraph of the charge states an incorrect rule.

The legal effect of the entire charge was to require the jury to find for the plaintiff for the reasonable value of the services upon proof that defendant requested and the plaintiff performed services unless the defendant proved a specific agreement that no compensation or a different compensation was to be paid. It relieved the plaintiff of the necessity of proving that the request was made with intent to contract to pay, cast upon the defendant the burden of proving that there was no such intent, and declared that he could only discharge that burden in one way, and that was by proving a specific agreement to the contrary.

In placing this burden upon the defendant, the court erred. On this subject the principles announced in *Dykeman* v. *Johnson,* 83 Ohio St., 126, 93 N. E., 626, rule this case. In that case, as in this case, the defendant's answer contained a general denial followed by an explanation. It was contended that this placed the burden upon the defendant of proving the explana-

tion, that is, of proving that the services were rendered under a specific agreement that under certain circumstances which had transpired the plaintiff was not to charge for his services. The court held that the entire burden in the case rested upon the plaintiff.

In the second paragraph of the syllabus of the *Dykeman case*, the court said:

"The legal effect of such an answer taken as ·a whole, is merely to deny the cause of action asserted by plaintiff in his petition, and the burden of proof upon the issues thus joined rests with the plaintiff * * *." The court distinguished *Sanns* v. *Neal*, 52 Ohio St., 56, 38 N. E., 881, as we construe the opinion, on the ground that the answer in that case pleaded payment, the burden of proving which, of course, rested upon the defendant. The facts in the *Sanns case* are as dissimilar to the facts in the case at bar as they are from the facts of *Dykeman* v. *Johnson, supra*. The latter case is supported by a long line of cases, some of which are cited in the opinion in that case. They furnish the rule to guide us in this case.

For these reasons the judgment is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed.*

HILDEBRANT and MATTHEWS, JJ., concur in the syllabus, opinion, and judgment.

Ross, P. J., concurring in judgment. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton County rendered in conformity to a verdict for the plaintiff.

In the original petition, the plaintiff stated that he had performed certain services for defendant as a licensed real estate agent at the request of the defendant, and that he was entitled to be compensated for

the reasonable value thereof. The answer was, in effect, a general denial with an added defense of waiver of compensation. A reply was filed by plaintiff denying the new matter set up in the answer.

The case proceeded to trial upon such pleadings. In the examination of a witness for plaintiff, it was sought to be proved that the defendant had specifically *promised* to pay such compensation. The defendant interposed his objection, claiming a variance in the proof and issues made by the pleadings, upon which the plaintiff asked leave to amend his petition to conform to such proof. This request was granted. The defendant then asserted that he was not prepared to meet the new cause of action stated in the amended petition and asked for a continuance. The requested continuance was granted and defendant was given leave to file an answer to the amended petition.

No reply was filed to the answer to the amended petition, in which answer the defendant denied that he had specifically promised to pay such real estate commission and again pleaded waiver. The trial then proceeded upon these amended pleadings.

The issues of fact thus created by the new pleadings were whether the defendant had requested plaintiff to perform certain services as a real estate agent; whether plaintiff had performed such services; whether defendant had *specifically promised* plaintiff to pay him the reasonable value thereof and had failed and refused to do so; and whether the plaintiff had waived compensation for such services.

Substantial evidence was introduced tending to sustain the contentions of both plaintiff and defendant.

The court gave the following special instruction:

"I charge you that if you find, by a preponderance of the evidence, that the plaintiff, Maurice L. Weinstein, was orally requested by the defendant, Jacob

Newman, to procure certain real estate, and if you find that he thereafter did procure said property, then you must find for the plaintiff, Maurice L. Weinstein, in an amount that will adequately and reasonably compensate him for the services he rendered the defendant.

"In the absence of a specific agreement to the contrary, the law implies an agreement to pay what the services are reasonably worth."

In the general charge the court stated:

"The issues in this case are made up of the pleadings, an amended petition, an amended answer, and a reply, which should be brought to your attention. The reply in this instance was filed to the original answer and was not filed to the amended answer. Consequently Mr. Stewart in his remarks to you was right when he said there was no reply filed to the amended answer. Mr. Dennis has pointed out to the court just before I began this charge that this reply would have been refiled had he thought to refile that reply, so that had it been refiled, it would have completed the issue.

"As you now have it before you, you have an amended petition and an amended answer. In the amended petition the plaintiff here asks for the reasonable amount of his services involved in effecting a certain real estate deal, and he charges that in the pursuance of that deal a $1,000 cashier's check was posted with the prospective purchaser and he alleges further that he effected what his business was, and that was, he procured a purchaser and that he transferred to that purchaser a $1,000 check and that the deal was consummated as a result thereof, and that as a result of that particular consummated deal he is entitled to the reasonable amount of his services and he says that the reasonable amount of his services is $1,400.

"An answer has been filed on behalf of Mr. New-

man, in which this procedure is denied and, furthermore, it is said that this particular deal that went through was not due to Mr. Weinstein's activities, and, furthermore, his answer says in effect that there was a certain understanding arrived at at a later time, in which the plaintiff agreed to waive whatever claim he might have against the defendant as a result of this deal.

"What you have before you is a simple issue of deciding just this: If you find in this case the plaintiff has proved by a preponderance of the evidence his allegations, you find for the plaintiff. If you find that he has not proved by a preponderance of the evidence all of his allegations, you will find for the defendant. In other words, if you find that the plaintiff in his capacity as the real estate dealer did procure a purchaser for Mr. Newman, that he did transfer to that purchaser a $1,000 check, and if you find further that that purchaser accepted the check and the deal went through as the result of the professional activities of Mr. Weinstein, then you will find for the plaintiff. On the other hand, if you find that these particular allegations made by Mr. Weinstein are not true, that Mr. Weinstein did not procure the purchaser, and that he was not the procuring cause of this deal going through, then you will find for the defendant.

"Furthermore, if you find Mr. Weinstein did act as the procuring cause and did effect this particular sale that went through and did therefore merit a reasonable amount of money for his services, but at a subsequent date waived said claim for services, then you will find for the defendant. If, on the other hand, you find Mr. Weinstein effectively consummated this deal and, therefore, if you find that he had coming to him a reasonable amount of compensation for his services, and if you further find that at a later date he did not

waive any claim for these services, then of course you will find again for the plaintiff.''

It is thus apparent that the trial court failed completely to present to the jury the case made by the pleadings and evidence, and, therefore, no verdict rendered by the jury could be responsive to the real issues in the case. A judgment rendered in conformity to such verdict must, therefore, be set aside, as not being responsive to the issues produced by the pleadings and evidence. *Aetna Ins. Co.* v. *Reed,* 33 Ohio St., 283; *Beck, Trustee,* v. *Beagle,* 28 Ohio App., 508, 162 N. E., 810.

The pleadings and evidence made a definite case upon a special promise or what was formerly known at common law as special assumpsit. The case was presented to the jury upon the theory of implied promise, or what was at common law known as indebitatus assumpsit. The fact that the pleadings were amended during the trial only emphasized the difference between the two actions.

I, therefore, agree that the judgment should be reversed and the cause remanded for a new trial, and this is the extent of my concurrence in the syllabus, opinion, and judgment.

The majority of the court has seen fit to express in the syllabus and the opinion conclusions of law which I consider to be not only obiter but also erroneous. Some further statement, therefore, seems appropriate.

I vigorously dissent from the conclusion that the only difference between an action upon a special promise and one upon an implied promise is a matter of proof, and that in the former case the *promise* is proved by evidence of oral or written words, whereas the latter is proved by the actions of the defendant. Obviously, there is a radical difference of proof in the two actions, but the essential difference is that in the

action upon the special promise the defendant voluntarily assumes liability, whereas in the action upon the implied promise it is necessary to invoke a legal presumption in order to impose liability.

There is, therefore, an essential substantive difference between the two actions, and a defendant should not be required to answer to one when the other is tendered by plaintiff as the basis for his recovery.

Section 11238, General Code, provides:

"There shall be but one form of action, to be known as a civil action. This requirement *does not affect* any substantive right or liability, legal or equitable." (Emphasis added.)

It is well known that our substantive rights, recognized today (exclusive of statutory enactment), are those which were developed in the courts of common law. We have these by tacit adoption.

The courts of common law long resisted any imposition of liability based upon the theory of promise readily accepted by the civil law. It was not until the beginning of the seventeenth century that the courts of common law reluctantly receded from their position. At that time, in cases of which *Slade's case* (*Slade* v. *Morley*), 4 Coke's Rep., pt. 4, 92 b, page 505, is a type, the defendant was held liable for the breach of a promise because he had assumed, for a consideration, to pay. The same principle was applied in imposing liability for negligence in those cases where the defendant had assumed to do something and did it in such a way as to cause loss to the plaintiff, as where defendant assumed to carry the horse upon his ferry, which sank, and caused the loss of the horse. In the beginning, whether the action was based upon an obligation to pay money or to perform a service, it was in tort and responsibility ended with the death of either party. Later, arbitrarily, the courts began to

recognize the survival of the former action, while still retaining that of negligence in the tort category. When the principle of the express promise was extended to cases where a consideration had passed to the defendant, or a detriment was suffered by plaintiff without definite promise, liability was imposed upon the theory that by receipt of the consideration or the suffering of the detriment the defendant impliedly promised to pay the plaintiff, and having failed to pay was liable in damages to the plaintiff because he had failed to keep a promise which the law presumed he made and which obviously he did not. The two actions were separated by appropriate forms at common law. Those forms have been abolished, but the substantive rights developed have been retained specifically by statute.

The fact that the amount of the consideration is not definitely included in an action upon an express promise obviously does not change that action to an action in which liability is imposed *only* by law.

Unless we are to abandon pleading, the plaintiff should be required to conform his proof to his pleadings; and when the plaintiff predicates liability upon a special promise, he should be required to prove that promise or accept defeat in the action he has chosen to bring against the defendant. The fact that no prejudice could be shown to the defendant in the converse of this situation is beside the point. The defendant could not be heard to complain that the plaintiff, relying upon only implied promise, had proved an express promise.

In the instant action, however, where the plaintiff abandoned his action on implied promise and specifically alleged an express promise, certainly, he should not then be permitted to return to his action upon implied promise only.

Again, I do not agree that the plaintiff in an action upon an implied promise must in his pleading negative a gratuitous furnishing of consideration by the defendant. The law ordinarily implies a promise to pay for services rendered or chattels received. This is the ordinary situation. If circumstances are involved indicating gratuitous service, then this is the unusual situation, and the defendant should prove those circumstances. This he could do under a general denial, including, as it does, denial of the implied promise. Until such facts are made to appear, however, the normal, ordinary responsibility following receipt of consideration should render unnecessary proof by plaintiff that such ordinary relationship does require payment.

The plaintiff enters an action upon implied promise with a prima facie presumption in his favor that where the defendant has received a consideration he should pay for it. The duty rests upon the defendant to meet this primary presumption of fact by evidence to the contrary.

I regret that I have been compelled to thus meet obiter with obiter, but I could not pass unchallenged statements in the syllabus and opinion, which seem to permit an abandonment of all recognition of the substantive rights created by the common law and retained in our practice specifically by statute, and an abandonment of the recognition of the essential differences between the actions which we have inherited and incorporated in our modern law.