RYAN, APPELLANT, *v.* SCHOTT, JR., ET AL., APPELLEES.

(No. 8588—Decided May 18, 1959.)

318

*Messrs. Taft, Stettinius & Hollister,* for appellant.

*Mr. Fred S. Kotte, Jr., Messrs. Cohen, Baron, Druffel & Hogan* and *Messrs. Kyte, Conlan, Heekin & Wulsin,* for appellees.

*Per Curiam.* This is an action for specific performance of a contract, originating in the Common Pleas Court of Hamilton County, and appealed therefrom to this court on questions of both law and fact.

The alleged contract, of which specific performance is sought, was one whereby the plaintiff agreed to buy and the defendants agreed to sell all the corporate stock of Southern Industries & Investment Company, the sole asset of which was, seemingly, the Enquirer Building. The subject matter of the negotiations was, therefore, in substance, the Enquirer Building, and all the parties so recognized it.

At the trial in this court, by stipulation of the parties, the case was submitted on the transcript of the testimony introduced in the Common Pleas Court and the exhibits.

The Court of Common Pleas set forth in an opinion the reasons for its conclusion that the plaintiff had failed to substantiate his allegations that a contract existed between the parties, and, on plaintiff's request, made separate findings of fact and conclusions of law. While our findings must be entirely independent of any conclusions reached by the Common Pleas Court, still the appellant has brought the trial court's opinion before this court as an exhibit to its brief, and has, to a large extent, fashioned its brief on the framework of the findings of fact. We cannot avoid considering these documents as precedents. We find it unnecessary to analyze the evidence to the extent found in the briefs of the respective parties.

There is but one issue in the case, which is one of fact only, and that is whether the conduct of the parties, including the language used by them under the surrounding circumstances, indicates that they had bound themselves to the purchase and sale of the stock in question.

The parties were not dealing with an inconsequential subject matter. They were negotiating with reference to a large office building, the value of which depended upon its operation

over a period of time. To what extent had vacancies occurred? For how long? What was the revenue? Would it be sufficient to pay the interest on the large indebtedness by which it was encumbered? In what way could the defendants sell this stock so that they could be relieved of the large personal obligation?

It was a complicated situation. Both parties so recognized it, and from the beginning, as evidenced by the fact that each party at all times was accompanied by his lawyer and the negotiations were carried on in the law office of the defendants' lawyer.

The parties seemed to have had very little difficulty in agreeing on $120,000 as the selling price, but there were other matters to be considered which required prolongations of the negotiations for several days. These negotiations related to the details of the transfer, the defendants seeking, as far as possible, to be released from their personal obligations, and the plaintiff seeking to avoid assuming obligations and making sure that the purchase would be profitable.

As the parties approached agreement, they turned to their lawyers to prepare a written agreement setting forth the terms thereof. And from that time on reference was frequently made to a written agreement.

But it is said that one of the defendants at one time said: "Its a deal," and that he shook hands with the plaintiff on it, and that thereby a contract of sale was effected of the magnitude and complexity of this transaction, and that the effort to formulate a written contract was to follow the contract.

It is said that only details were left to be agreed upon, but failure to agree would have left the parties dependent upon oral testimony to sustain their positions as they are in the case now before this court.

We are of the opinion that the parties never intended to be bound other than by a written contract, that the conduct of the parties and what they said all point to that conclusion, and they never reached the point where there was a meeting of the minds in all respects, and that accounts for the fact that no written agreement was entered into, and that defendants were free to withdraw the offer made by them and to terminate negotiations.

Counsel cite *Woods* v. *Fifth-Third Union Trust Co., Exr.,*

54 Ohio App., 303, 6 N. E. (2d), 987, but we think that case supports the conclusion we have reached in this case. Notwithstanding there was evidence of promissory words, we held that under the circumstances no contractual obligation was intended. At pages 306 and 307 therein, we quoted the following, with approval, from the decision of the court in *New York Trust Co.* v. *Island Oil & Transport Co.*, 34 F. (2d), 655:

" 'However, the form of utterance chosen is never final; it is always possible to show that the parties did not intend to perform what they said they would, as, for example, that the transaction was a joke (*Keller* v. *Holderman*, 11 Mich., 248, 83 Am. Dec., 737; *McClurg* v. *Terry*, 21 N. J. Eq., 225; *Theiss* v. *Weiss*, 166 Pa., 9, 20, 31 A., 63, 45 Am. St. Rep., 638; *Bruce* v. *Bishop*, 43 Vt., 161); or that it arose in relations between the members of a family which forbade it (*Earle* v. *Rice,* 111 Mass., 17; *Bundy* v. *Hyde,* 50 N. H., 116). It is quite true that contracts depend upon the meaning which the law imputes to the utterances, not upon what the parties actually intended; but, in ascertaining what meaning to impute, the circumstances in which the words are used is always relevant and usually indispensable. The standard is what a normally constituted person would have understood them to mean, when used in their actual setting.' "

An entry may be presented, finding for defendants, and dismissing the plaintiff's petition and action.

*Judgment for defendants.*

MATTHEWS, P. J., LONG and O'CONNELL, JJ., concur.