DANIEL CONNER v. EDWARD CARPENTER.

*Avoiding written contracts by parol testimony. Mortgage of personal property.*

Where there is a written contract, it cannot be shown by oral testimony that, at the time of its execution, it was agreed and understood that the writing was a sham, and designed only to deceive the creditors of one of the parties; or that the real agreement between the parties was different from that expressed in the writing.

Distinctions between a mortgage and a pledge of personal property. Application of these distinctions, and construction of the contract, between the parties in the present case.

TROVER for a horse. Plea, the general issue; trial by jury, June Term, 1855,—PECK, J., presiding.

The plaintiff bargained with Jesse M. Scofield, for a span of mares, and applied to the defendant to sign a note with, and as surety for him, to the said Scofield, in payment therefor, and it was finally agreed that the defendant should himself purchase the mares of Scofield, and give his note therefor, and that the plaintiff should transfer to Scofield the horse in question, which the plaintiff then owned, and that it should be included in the sale from Scofield to the defendant, and that both the horse and the mares should be held by the defendant, as security for the payment by the plaintiff, to Scofield, of the notes given by the defendant, for the mares. The several transfers were made as agreed, and thereupon the horse and mares were delivered by the defendant to the plaintiff, and, at the same time, the plaintiff gave to the defendant a writing, as follows.

" Know all men by these presents that I have this day hired to Daniel Conner three horses: one four year old gelding horse, dark chestnut, switch tail, two white hind feet; and one span of six year old mares, formerly owned by J. M. Scofield. Said Conner has possession of said horses, so long as I, Edwin Carpenter, shall see fit, and no longer ; and that I hold possession of said horses, and that said Conner shall not have a right to let, sell or hire, or make over to any other person or persons, the above mentioned horses, and further, the said Conner agrees to pay the sum of ten dollars per month for said horses."

(Signed) ." DANIEL CONNER."

Some time after this, and before the commencement of this suit, the notes given by the defendant to Scofield being then and still unpaid, the defendant took the horse in question from the possession of the plaintiff, without his consent, and detained him. Upon the trial, after proof of the above mentioned facts, the plaintiff offered to show, by parol testimony, that by a verbal agreement between him and the defendant, made at the same time the written agreement was executed and delivered, that the writing was agreed and understood to be a sham, and to be only to keep off the creditors of the plaintiff, from attaching the property ; and that the parol agreement made between them was, that the plaintiff was to have the use and possession of the horse, and the ownership and control of it ; and that the paper was not intended to express the real contract ; that by the verbal agreement, the transaction was a mere pledge of the horse, as security to the defendant for signing the notes, and that in the mean time, while the notes were outstanding, the plaintiff was to have the possession of said horse, and the right to use, and control, and dispose of the same, insisting that the writing was not conclusive, and that it was not binding, not being signed by the defendant.

This parol evidence being objected to by the counsel for the defendant, the court decided that, notwithstanding the written agreement, it was competent to show by parol, the consideration of the written contract, and that the purchase of the property from Scofield, and the turning out or transfer of the horse in question, was intended for the benefit of the plaintiff, and as a security merely to the defendant, for signing the note, and that the plaintiff was to have the whole property on paying the notes, or indemnifying the defendant therefrom ; and that the plaintiff had paid or indemnified the defendant from said notes, so as to entitle him to the possession of the horse ; but that it was not competent to show any agreement by parol, made at the same time the writing was, varying the stipulations therein, as to the right of possession or control of the horse, while the notes remained unpaid by the plaintiff ; and excluded the evidence (as offered) on this point.

The court decided that upon the written agreement, and the above facts, which were testified to by the plaintiff's witnesses, the defendant had a right to the possession of the horse, at the time of

the taking complained of, and directed a verdict for the defendant.
Exceptions by the plaintiffs.

*H. E. Royce* and *A. O. Aldis* for the plaintiff.

The horse sued for was merely agreed to be pledged to the
defendant. Without actual delivery, such agreement was inopera-
tive. The possession and delivery from Scofield was not such a
delivery as made a valid pledge between the parties.

As to the written contract, as it was intended by the parties
merely as a sham, not intended to express the real contract; it was
no contract between the parties. The claiming of it by the defend-
ant, as a contract, was a fraud. It was not signed by the defend-
ant, because it was not intended to be binding. The court there-
fore erred in assuming that it was a contract, and conferred a right of
possession of the horse upon the defendant. It was for the jury
to say whether it was or was not a contract.

*J. Rand* for the defendant.

The offer of the plaintiff to prove, by parol, that the real agree-
ment was different from that expressed in the writing, and that the
writing was not intended to express the contract, presented simply
this question; can parol evidence be admitted to contradict, vary,
control, or add to the written contract. The whole current
of authority is against the proposition. *Linsley* v. *Lovely*, 26
Vt. 123. *Bradley* v. *Bentley*, 8 Vt. 243. *Bradley* v. *Anderson*, 5
Vt. 152.

The plaintiff cannot claim that the contract between him and
the defendant was more favorable to him than to call it a mortgage
of the horse, and other property, upon condition that the plaintiff
should pay the notes to Scofield. *Holmes et al.* v. *Cram*, 2 Pick.
607. *Brown* v. *Bennett et al.*, 8 Johns. 96.

The plaintiff cannot set up fraud as to his creditors to avoid the
contract. *Gifford* v. *Ford*, 5 Vt. 532, and cases there cited.

The opinion of the court was delivered by

REDFIELD, CH. J. We have examined this bill of exceptions
with some care, and, it seems to us, the case was correctly decided
by the county court.

I. The offer to show by oral evidence that, at the time the contract was executed, the writing was agreed to be a sham, if admissible, would certainly afford a very expeditious mode of evading the rule that the written contract shall exclude all oral stipulations or deductions made at the same time. If this evidence is equivalent to an offer to show that it was part of a scheme to impose upon the plaintiff's creditors, or others,-it would not be competent for the party to thus escape from his contract. He should nevertheless be bound by his undertaking. In any other view the offer seems to be an attempt to contradict and evade the effect of the writing by oral evidence. The extent to which the evidence was allowed in the court below seems, certainly, all that could be justified by the rules of, evidence.

The plaintiff was allowed to show the condition and the circumstances under which, and the object for which the writing was given, and that he had paid the price of the horses so as to defeat the defendant's claim, but not to contradict or vary the terms of the written contract.

II. The objection that this was a mere pledge, and that allowing the property to go back into the possession of the pledgor extinguished the right, is sound, if the premises are maintainable. But the transaction was intended, obviously, to secure the defendant, consistently with the possession remaining in the general owner. This is what is meant by a mortgage of personal estate. One of the important distinctions between a mortgage of personal estate, and a pledge is, that in the former case, the general owner may, as between the parties, retain possession of the chattels, and in the latter, the special owner must have possession of them. The same terms, which create a pledge if the possession passes, will often be held to create a mortgage ; ordinarily, perhaps, if the possession is to be retained by the general owner. Another important distinction between a pledge and a mortgage of personal property is, that in the former only a special property passes, and in the latter, the general property.

It is obvious, in the present case, according to the plaintiff's own testimony, that the purpose and object of the transaction was to create a security to the defendant, for signing the note to Scofield, and to do this by mortgage of the three horses, and the other property,

with the agreement that the defendant might take possession of the property at any time he chose. Under this state of the case, we do not see how the plaintiff can expect to maintain this action, without first paying the notes, and demanding his property.

Judgment affirmed.