ALICE C. EARLE *vs.* WILLIAM W. RICE & others.

Oral evidence that an instrument purporting to be an agreement between husband and wife, was signed by both with the understanding that they were not legally bound thereby, is admissible in equity to show that the instrument should not be allowed any effect.

A husband and wife signed an agreement, with the understanding that it would not be legally binding on either of them, that her land should be sold and the proceeds placed in the hands of trustees, in trust to pay the income to her during her life, and on her death to pay the principal to their children. No trust deed was ever executed, on account of disagreement between the parties, but the land was advertised and sold, and deeds signed by the husband and wife were delivered to the purchasers under an agreement between husband and wife that no rights should be prejudiced by the sale and conveyance. The husband was afterwards divorced from his wife, and then released to her his interest in the land. *Held,* that the wife was entitled to the proceeds of the sale, free from any trust in favor of the children.

BILL IN EQUITY against William W. Rice, Thomas L. Nelson, Thomas Earle, Edward Earle, Philip Henry Earle, Ellen Chase Earle, and Thomas H. Earle, the last four being minor children

of the plaintiff and the defendant Thomas Earle, praying that a paper signed by the plaintiff and Thomas Earle might be delivered up to be cancelled, and that Rice and Nelson might deliver to the plaintiff the proceeds of the sale of certain real estate of hers in their hands. Philip Henry Earle having died, an administrator of his estate was appointed; a guardian *ad litem* of the other children was appointed; and Rice, Nelson, the administrator and the guardian *ad litem*, filed answers.

At the hearing, before Gray, J., it appeared that in February, 1869, the plaintiff being then married to Thomas Earle, and having several children by him, was seised in fee in her own right of land in Worcester, which had been devised to her by her father; and that she and her husband, being desirous of selling this land, signed a memorandum, dated February 23, 1869, which, after reciting the ownership of the land and the desire of the parties to sell it, continued thus:

"It is understood and agreed that said real estate shall be advertised and sold, some time during the month of March next, — said parties joining in the conveyance thereof; and the proceeds thereof, after paying the expenses of said sale, and discharging any incumbrances thereon, shall be placed in the hands of Edward Earle and William W. Rice, in trust, to pay the current expenses, taxes, &c., of said trust and fund, from the income thereof, and to pay the remaining income thereof to the said Alice C., to be used by her for the support of herself and children, and any balance thereof according to her own free will and pleasure. And at the decease of the said Alice C. to pay to the children of herself and the said Thomas said fund, share and share alike, for their absolute use and enjoyment. And it is understood that a deed of trust shall be prepared in proper form to carry out the understanding and intention above summarily expressed, with such proper details and provisions as shall be necessary to make the same effectual."

William W. Rice testified that Thomas Earle asked him to draw this memorandum; that he replied that he did not believe such an agreement would be legally binding between him and his wife; that Thomas Earle then said "I do not suppose the

writing will be binding between us, but I want it made, and I will sign it, and she can sign it if she will; we shall then be morally bound by it, the friends of both can see what I am willing to do, and if either party refuse to be bound, it will be known who is to blame"; that the witness drew the paper and Thomas Earle signed it; and that the witness told the plaintiff what Thomas Earle said.

The plaintiff testified that Rice brought her the paper, and told her very plainly that it would not be legally binding, and that her husband knew it was not legally binding, but considered it as morally binding, and as showing that he was willing to do what was right in the matter; that she showed it to her counsel, and told him that her husband was aware that it was not legally binding; that her counsel told her that she was not legally bound by it, but would of course feel morally bound to carry out its provisions, and that it was right for her to sign it; and that she signed it.

The administrator and the guardian *ad litem* objected to the admission of this testimony.

It further appeared that the plaintiff's land was advertised for sale, and sold to different purchasers; that no trust deed was ever executed because the parties could not agree upon its details; and that in order that the purchasers might have their deeds, Thomas Earle and the plaintiff signed and sealed the deeds of the land; and on April 17, 1869, signed, by their authorized attorneys, the following agreement:

" It is agreed that William W. Rice may deliver the deeds of Alice C. Earle and Thomas Earle, of certain real estate situate in Worcester, to the purchasers thereof, and receive the proceeds thereof according to the terms of sale, with such allowance for interest as may be proper, to be held by himself and Thomas L. Nelson upon the following trusts, to wit: Said principal fund and the income thereof shall be held by the said trustees subject to the legal and equitable rights of the said Alice C. Earle and Thomas Earle and of their children, to be hereafter determined, and until such determination by agreement or otherwise, to pay said income to the said Alice C. Earle, to be used and disposed of by her, sub-

ject to the legal and equitable rights of the parties, and such rights shall in no way be prejudiced or affected by reason of the sale of said real estate. And the question whether the said Thomas and Alice C. Earle were bound to deliver said deeds, is left open. And the substitution of the said Nelson for Edward Earle as a trustee jointly with said Rice to hold said fund and income, shall not affect or prejudice the rights of said parties."

It also appeared that Rice delivered the deeds to the purchasers, and he and Nelson received the purchase money; and that afterwards, on May 24, 1869, Thomas Earle obtained a divorce from the plaintiff, and immediately thereupon gave her a quitclaim deed of the land.

The case was reserved by the judge for the consideration of the full court, such decree to be made therein as justice and equity might require.

*B. F. Thomas,* (*S. B. Ives, Jr.,* with him,) for the plaintiff.

*J. W. Perry,* (*W. C. Endicott* with him,) for the guardian *ad litem.*

GRAY, J. We are not required to determine how far an executory contract made by a wife with her husband for the disposition of her interest in real estate may bind her in equity, because we are of opinion that, independently of the objection to their capacity to contract with each other, no agreement is proved which can be held to affect the plaintiff's rights.

As to the memorandum of February 23, 1869, the evidence is full and conclusive that it was signed by the husband with the understanding that it would not be legally binding, or anything more than a moral or honorary obligation, upon either party; and by the wife, after being informed that such was the husband's understanding of its effect, and after being advised by her counsel that it would not legally bind her. In short, both parties signed it with the understanding that they were not bound thereby, except so far as they might feel themselves morally obliged to carry out the intention therein expressed. Evidence of this character, though not competent to control the interpretation of the contract, is clearly admissible to show that the contract should be set aside, or treated as of no effect, in equity. *Townshend*

v. *Stangroom,* 6 Ves. 328. *Willan* v. *Willan,* 16 Ves. 72. *Bradford* v. *Union Bank of Tennessee,* 13 How. 57. *Western Railroad Co.* v. *Babcock,* 6 Met. 346. *Glass* v. *Hulbert,* 102 Mass. 24, 35.

The deed of trust, which the memorandum itself provided should be prepared in proper form to carry out the understanding and intention therein summarily expressed, was never executed, by reason of a difference arising between the parties as to its details.

In accordance with the terms of the memorandum, the estate was indeed advertised for sale, and sold with the assent of the husband and wife, and deeds thereof signed by both ; but those deeds contained no provision as to the disposition of the purchase money, and were not delivered until after the agreement of April 17, 1869, had been signed by the authorized attorneys of the husband and the wife ; and that agreement expressly provided that the legal and equitable rights of the parties should in no way be prejudiced or affected by the sale, and that the question whether the husband and wife were bound to deliver the deeds was left open.

It follows that the wife has done nothing to affect her rights in the land devised to her by her father, or to confer any rights therein upon her husband or children ; and that the proceeds of the sale of the land, in the hands of the trustees, belong to her as fully as the land did before the sale. The husband, having been divorced from her, was rightly made a party to the bill. He had released all his interest in the estate to her before the bill was filed. And the children having no interest in the estate or its proceeds, there must be a *Decree for the plaintiff.*