## NEW YORK TRUST CO. v. ISLAND OIL & TRANSPORT CORPORATION.

## Ex parte COMPANIA PETROLERA CAPUCHINAS.

Circuit Court of Appeals, Second Circuit.
June 24, 1929.

No. 273.

William M. Chadbourne, of New York City (Clinton De Witt Van Siclen, of New York City, on the brief), for appellant.

Carl J. Austrian, of New York City (Saul J. Lance, of New York City, on the brief), for appellees.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge. The Island Oil & Transportation Corporation, not being permitted under the Mexican law to own or operate oil-bearing lands within 50 kilometers of the coast, resorted to the device of or-ganizing a number of Mexican companies, staffed with Mexican officers. It held all the shares of stock in these, except such as were necessary to qualify the directors, and conducted the business directly, either in New York or Tampico, by means of its own officers under the supervision of its directors. The Mexican officers of these companies had no voice whatever in its affairs, decided nothing, and were not consulted by the parent company. Nevertheless books of account were kept between the subsidiaries and the parent, showing apparent sales and payments, and in general a complete simulacrum of real transactions. The Mexican law required Mexican companies to keep books of account and records in Spanish, and prescribed their form. These accounts showed various balances, one way or the other, and in the case of the claimant a very large indebtedness for oil, which the parent had not paid. The shares of stock of all these subsidiaries having been pledged under a mortgage of the parent company, they were sold in foreclosure, and the subsidiary, then in new hands, filed a claim against the receivers of the parent for the balance thus shown due. This being referred to a master, he dismissed the claim as being without substance, and the District Judge confirmed his report.

We have very recently considered the liability of a parent company to third persons for acts, formally those of a subsidiary, and we held that the question turned upon whether the parent acted directly in the transaction, through its own officers, or only through its indirect power retained by virtue of its ownership of the subsidiary's shares. Costan v. Manila Electric Co., 24 F.(2d) 383; Kingston Dry Dock Co. v. Lake Champlain Transportation Co., 31 F.(2d) 265. If this were such a situation, so that those decisions applied, we should be content to rest upon them without further comment. It is not; the parent's liability to a third person depends on quite different considerations from that to a subsidiary; the second is a question of intent, like that in any other contract. Having for one reason or another adopted the form of independent companies for the conduct of their enterprises, each with a jural personality of its own, the associates could create whatever rights between themselves they wished, provided they gave the necessary expression to their intent.

■ However, the form of utterance chosen is never final; it is always possible to show that the parties did not intend to perform what they said they would, as, for example, that the transaction was a joke (Keller v.

Holderman, 11 Mich. 248, 83 Am. Dec. 737; McClurg v. Terry, 21 N. J. Eq. 225); Theiss v. Weiss, 166 Pa. 9, 20, 31 A. 63, 45 Am. St. Rep. 638; Bruce v. Bishop, 43 Vt. 161); or that it arose in relations between the members of a family which forbade it (Earle v. Rice, 111 Mass. 17; Bundy v. Hyde, 50 N. H. 116). It is quite true that contracts depend upon the meaning which the law imputes to the utterances, not upon what the parties actually intended; but, in ascertaining what meaning to impute, the circumstances in which the words are used is always relevant and usually indispensable. The standard is what a normally constituted person would have understood them to mean, when used in their actual setting. In the case at bar it is abundantly clear that no such person, making the records here in question in such a background, would have supposed that they represented actual sales of oil; that is, commercial transactions. They were made for quite other purposes, formally to conform with, and, if one chooses, to evade, the Mexican law. They were a sham, which nobody did, and nobody advised could, understand as intended to be more. Perhaps for this reason they were a fraud on the Mexican government, an effort to keep the pretense of compliance with its own notions of what was essential to its national safety, while the parties went their way at their own pleasure. While this is perhaps not directly proved, it is certainly not improbable, and, since we think it makes no difference in the result, we shall assume as much arguendo.

The question then becomes whether legal obligations shall be attached to utterances which would otherwise not create them, because they were part of a plan to deceive third persons. We are to distinguish between such a situation and one in which the person deceived has acted in reliance upon the truth of the utterances, and bases his rights upon them, for here we are only concerned with the existence of obligations between parties equally implicated. We cannot see why their common fault should so change the relations between them. Indeed, if we were asked to intervene between them, and give relief based upon the sham transaction, we might refuse; "in pari delicto potior est conditio possidentis." Here we must raise an obligation where none would otherwise exist, because by hypothesis both were concerned in a fraud upon a third. As compensation, this would be fruitless; as punishment, it would be capricious; as law, it would create an obligation ex turpi causa.

The law in Vermont appears to be otherwise (Conner v. Carpenter, 28 Vt. 237; Grand Isle v. Kinney, 70 Vt. 381, 41 A. 130); but there are other cases to the contrary, though it is only fair to say that they do not seem directly to have faced the issue (Kelly v. Sayle, 15 Dom. L. R. 776 [Can.]; Lavalleur v. Hahn, 152 Iowa, 649, 132 N. W. 877, 39 L. R. A. [N. S.] 24; Humphrey v. Timken Carriage Co., 12 Okl. 413, 75 P. 528; Southern Street-Railway Advertising Co. of Baltimore City v. Metropole Shoe Mfg. Co., 91 Md. 61, 43 A. 513). Professor Wigmore (section 2406) appears to support the Vermont rule, and this would ordinarily be to our minds conclusive; but for the reasons given we cannot in this instance yield even to the great weight of his authority.

Decree affirmed.