## SUPERHEATER CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 118.

Circuit Court of Appeals, Second Circuit.
February 3, 1930.

George E. Holmes, of New York City (Valentine B. Havens and Jacob Mertens, Jr., both of Washington, D. C., of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Andrew D. Sharpe, both of Washington, D. C. (C. M. Charest, General Counsel, and R. N. Shaw, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before MANTON, L. HAND, and MACK, Circuit Judges.

L. HAND, Circuit Judge.

The petitioner is a New York company, the successor of a Delaware company, called

the Locomotive Superheater Company, with which, for the purposes of this case, it may be identified. The Locomotive Company in 1919 owned some shares in a British company, which the British Public Trustee had seized during the Great War. Wishing to re-establish its interest in the company, the Locomotive Company offered £25,000 for 61,000 shares, a majority, of the British company's stock, of the par value of £1. This negotiation fell through, because the British law would not allow aliens to hold a majority of the shares of a British company. Thereupon the Locomotive Company offered to take 25,000 shares, not then issued, for 15 shillings a share, together with 15,000 shares, also unissued, in consideration of an agreement by which it was to license the British company under certain of its patents at a royalty. The bargain was so concluded, and 15 shillings were paid for the 25,000 shares before March 21, 1920, when presumably they were issued. The license agreement was made on September 10, 1920, and the 15,000 shares were issued a week later.

The by-laws of the British company prohibited the issuance of shares at less than 75 per cent. of their par value, and the board found that the transaction was lawful under British law in the form it took of two separate agreements, but that, construed as a single agreement, it would not have been. We can interpret this only as meaning that the issuance of 25,000 shares at 15 shillings a share and of 15,000 shares for the license agreement, was in conformity with British law, but that this would not have been true if 40,000 shares had been issued for 9 shillings, 4 pence, half-penny in cash, together with the license agreement. This is indeed so curious a result that it is hard to believe, but the case comes up without the evidence, and we have no means of knowing the British law, except as the Board has found it. Moreover, the petitioner does not assign the finding as error or challenge its correctness in its brief.

The value of the shares was 10 shillings, and the Commissioner therefore decided that the petitioner had realized upon the license agreement, which cost it nothing, the full value of the 15,000 shares so acquired, £7,500. The Board found that the petitioner would not have paid 15 shillings for the 25,000 shares, unless it had also acquired the 15,000 for the license, but nevertheless that it was not to be regarded as a purchaser of 40,000 shares at 9 shillings, 4 pence, half-penny, since it was impossible to rearrange the two contracts into one, or to ignore the form chosen. Moreover, they held that the transaction must be assumed to have been intended to conform to British law.

It seems to us that the question considered by the Board was irrelevant to the issues here. It makes no difference what any collateral agreement between the parties was; we might assume for argument that they expressly provided for the issue of 40,000 shares for 9 shillings, 4 pence, half-penny. Such an agreement was not a contract, and created no obligations, because the British law forbad its performance. If the shares were issued in accordance with its terms, they were invalid; the 25,000 shares could be valid only in case 15 shillings was their price. The parties, no doubt to conform with this requirement, made the formal contract so to issue them. If this was a mere disguise, not intended to determine their obligations, no doubt it did not do so as between themselves. New York Trust Co. v. Island Oil & Transport Co., Ex parte Compania Petrolera Capuchinas, 34 F. (2d) 655 (C. C. A. 2). But there was then no contract whatever.

Yet the parties did issue the shares and pay the consideration. Under British law it was a condition upon the existence of the 25,000 shares as property at all that the consideration should be allocated as the formal contract prescribed. No doubt the law did not require the parties to enter upon the transaction, but, having once undertaken to do so, it could and did attach to that act the prescribed condition. What they might agree upon to the contrary was therefore of no legal consequence whatever. Thus the Board in our judgment was right in holding that the 15,000 shares were issued in consideration of the license alone.

**Decision affirmed.**