**KIPE OFFSET PROCESS CO., Inc.**

**v.**

**UNITED STATES.**

United States District Court
S. D. New York.

June 30, 1954.

Wasserman, Behr & Shagan, New York City, Bernard A. Green, of counsel, for plaintiff.

J. Edward Lumbard, U. S. Atty., New York City, Milton R. Wessel, Asst. U. S. Atty., New York City, of counsel, for defendant.

IRVING R. KAUFMAN, District Judge.

This is an action against the United States to recover the sum of $3,087.99 for alleged breach of contract. Plaintiff is a corporation engaged in the business of printing and lithographing. For some years it has prepared and printed damage control diagrams for United States Navy ships.[1] These diagrams are usually printed in color but may be printed in black and white tones.

On June 30, 1948 the defendant, pursuant to a contract existing between the parties, submitted a written order (Job Order No. 8) to plaintiff, calling for the production by plaintiff of 50 damage control diagrams in color for naval vessel CV 36. The order contained the notation:

1. Damage control diagrams portray schematically one entire integrated system (electrical, for example) of a ship. When something goes wrong, either in battle or otherwise, an officer can ex- amine the diagram, immediately locate the point of damage, and then both isolate that point in order to avoid further damage and direct the commencement of repair work.

"This job *must* be delivered by 23 July. If unable to deliver the Bureau should be *notified immediately.*"

Plaintiff began preparing the diagrams but was unable to complete them in time. On August 11, 1948, defendant, after a conversation with plaintiff, issued a written "supplement" (Supplement No. 1 to Job Order No. 8). This supplement called for the production of black and white diagrams, which could be completed more quickly than color diagrams.

In accordance with the August 11 order, plaintiff completed and submitted the black and white diagrams to the Navy. Plaintiff ceased working on the color diagrams but suddenly resumed working on these diagrams in March 1949. Almost a year after the original order, to wit: in June 1949, plaintiff submitted the color diagrams and requested payment.

Defendant rejected the color diagrams on the ground that Job Order No. 8 had been modified by Supplement No. 1 so as to call for black and white *rather than* color diagrams. Defendant paid only that part of plaintiff's bill which would have been proper for black and white diagrams.

The single issue, apart from the question of damages, is whether Supplement No. 1 should be construed as an order for black and white diagrams *in lieu of* color diagrams or whether it should be construed as an order for black and white diagrams *in addition to* color diagrams.

Neither Job Order No. 8, nor Supplement No. 1, standing alone, is conclusive in a determination of the problem. Both are government order forms with only essential notations filled in. Even when considered with the basic contract pursuant to which the Order and Supplement were issued, ambiguity exists. Oral testimony to interpret and clarify the written documents was therefore received. Rotberg v. Dodwell & Co., 2 Cir., 1945, 152 F.2d 100, 101.

The trial testimony made clear that an honest misunderstanding did exist. But misunderstanding does not absolve either party from the legal obligation created by the written instruments. While the intent of the parties is often an aid in interpretation,

"contracts depend upon the meaning which the law imputes to the utterances, not upon what the parties actually intended * * *. The standard is what a normally constituted person would have understood them to mean, when used in their actual setting." New York Trust Co. v. Island Oil & Transport Corporation, 2 Cir., 1929, 34 F.2d 655, 656.

See also 3 Williston on Contracts, Section 613 at pages 1763–1764. Considered in their "actual setting", that is, together with all the circumstances surrounding the issuance of the basic contract, Job Order No. 8, and Supplement No. 1, I am convinced that a normal person would have read Supplement No. 1 as calling for black and white diagrams *in lieu of* and *not* in addition to, the color diagrams originally ordered.

Job Order No. 8, as previously stated, included the notation:

"This job *must* be delivered by 23 July. If unable to deliver, the Bureau should be *notified immediately.*"

Upon receipt of notification by the plaintiff that it was unable to produce the diagrams within the allotted time, defendant issued Supplement No. 1, which carried the notation:

"*Special Note*

"*This job must be delivered by August 17, 1948* as per telephone conversation between Bureau representative and Mr. Kipe on August 9, 1948."

These contract deadlines are a clear indication of the importance the defendant attached to production within a fixed time. The plaintiff through long experience in producing similar diagrams for the Navy must have known

that "time was of the essence". Despite this, plaintiff urges that it was reasonable to interpret Supplement No. 1 as authorizing it to produce black and white diagrams within the time stated and to produce color diagrams at its convenience, with no stated deadline. This is inconceivable for if plaintiff's version is to be accepted one must be prepared to say that the defendant consented to plaintiff's completion of the color diagrams any time it pleased, even after the lapse of many years. Everything in the case indicates that such careless and unbusinesslike conduct was not practiced by the Navy.

Plaintiff attempted to support its interpretation by testimony that color diagrams were essential for all combat vessels of the CV 36 type and that it was reasonable to conclude that the black and white diagrams were only for temporary use. But defendant's witness, Rand, a Navy employee in charge of the office which ordered damage control diagrams, testified without contradiction that every large combat vessel like the CV 36 required two *different* sets of diagrams, and that the second set, which was ordered at the end of a preliminary cruise, was always altered as a result of experiences at sea. Plaintiff's interpretation of Supplement No. 1 is therefore unconvincing for it is not reasonable to expect that the Navy would desire two copies of the same diagrams, when the invariable practice was to alter the diagrams on the second order.

It is to be noted also that at the trial plaintiff conceded that paragraph 12 of the complaint was erroneous. Plaintiff acknowledged that there were no previous instances where an original order for color was changed to black and white and where defendant accepted both color and black and white diagrams on two outstanding orders for the same vessel.

Furthermore, the government's witness, Mockabee, who drew up Supplement No. 1, testified that he had stated by telephone to Horace Kipe, plaintiff's president, on August 9, 1948, that the black and white diagrams were *in lieu of* the color diagrams and that Supplement No. 1 was issued pursuant to this conversation.

Plaintiff offered in evidence several explicit written cancellations of other government orders in an attempt to prove that explicit cancellation was customary when an order was withdrawn. Such proof, however, was largely irrelevant. The government conceded that explicit written cancellation was customary, and, indeed, required by the basic contract. But the government here claims that there was no cancellation, but rather a *modification* of the original order, i. e., from color to black and white. It is to be noted also that the cancellation orders offered by plaintiff were given in cases where, unlike the instant case, *all* future work on a particular project was terminated by the cancellation orders.

Mr. Kipe testified that on several occasions between August 1948 and June 1949, when the color diagrams were presented to the Navy, he personally indicated to Navy officials, including Rand and perhaps Mockabee, that the color diagrams were being produced. Rand and Mockabee, however, denied receiving this information. It is significant also that Kipe himself, when closely questioned, was able to state only that he *believed* he told Rand or other officials that the work was in progress. He was unable to recall any particular conversation. Considering all the other facts, I am convinced that the government did not at any time approve the production of color diagrams after the black and white had been ordered and that Kipe was mistaken in his testimony relating to conversations with Rand and other Navy officials.

 Taken together with the circumstances surrounding its issuance, I think it clear that Supplement No. 1 constituted a modification of the government's original order and that it called for black and white rather than color diagrams. The complaint is therefore dismissed.

Submit judgment.