**KILPATRICK BROTHERS, INC.,**
Appellant-Cross-Appellee,

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION,** Appellee-Cross-Appellant.

Nos. 71–1516, 71–1517.

United States Court of Appeals,
Tenth Circuit.

July 19, 1972.

Richard L. Bohanon, Oklahoma City, Okl. (Bohanon & Barth, Oklahoma City, Okl., of counsel, on the brief), for appellant-cross-appellee.

Andrew M. Coats of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl. (Bruce H. Johnson, of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., on the brief), for appellee-cross-appellant.

Before LEWIS, Chief Judge, DOYLE, Circuit Judge, and WINNER, District Judge.

WILLIAM E. DOYLE, Circuit Judge.

In this collection controversy there is involved a lease of a computer unit and attendant equipment and service composing together a complete data processing system. Plaintiff-appellee I.B.M. obtained summary judgment in the amount of $35,599.94.

I.B.M.'s cross-appeal challenges the District Court's refusal to award attorney's fees based on its decision that such action was not authorized by the Okla-

homa statute relied on. The court found that the sum of $9,170.00 would be reasonable.

Defendant-appellant's contentions here are:

1. That the actual agreement was different than the writing in that there was no intention that appellant Kilpatrick Brothers should be bound; that the intention was that a new corporation was to be formed and that I.B.M. was to look to it for payment.

2. That defendant-appellant made a mistake in that it did not believe that its signature on the writing was binding on it.

3. That the party who signed the contract, Charles Neale, was not authorized to do so.

One William Kilpatrick was shown to have owned 97 percent of the shares of appellant, Kilpatrick Brothers, Inc. The Treasurer of this company was Charles R. Neale who signed the contract for computer services to be furnished by I. B.M. At the time of the signing of this contract, Kilpatrick and Neale intended to form a data processing company known as Ramtec, Inc., and in fact did form it about one month subsequent to the execution of the contract. Neale was President and William Kilpatrick was Secretary of the newly formed company. Ramtec, Inc. was located on the same premises as Kilpatrick Brothers, and William Kilpatrick owned all of the Ramtec shares.

The contract, which is dated April 30, 1969, was signed by Charles Neale as Treasurer of Kilpatrick Brothers. After this the computer and other equipment were delivered, and statements were sent to Kilpatrick Brothers each month during the continuation of the contract. For several months while the contract was in force the equipment was subleased to Teleprocessing Computer Corporation of America. William Kilpatrick signed this as President, and it recited that Kilpatrick Brothers had entered into an agreement with I.B.M. Under this latter arrangement Kilpat-

rick Brothers received and negotiated four checks in the amount of $7,300.00 each from Teleprocessing. Needless to say, the checks were not remitted to I. B.M.

■ We have examined the record and are unable to discover any merit in the position of defendant-appellant that there was no intention that Kilpatrick Brothers was to be bound. The evidence shows that I.B.M. required a responsible promisor and would not have entered into the agreement had it not been for the presence of Kilpatrick Brothers, Inc. as the responsible signer.

■ We recognize that there is an exception to the parol evidence rule under which it is possible to show that the parties' written contract was not intended to be carried out. The formal contract in such a case must be shown to have been a sham. In Kind v. Clark, 161 F.2d 36, 46 (2d Cir. 1947), this principle was recognized. The court said through Judge Frank:

We might stop there: No sale results where one party to an outwardly seeming sale knows that the other does not mean his words or acts to be taken seriously. But here the facts are even stronger, for the alleged sellers did not intend the sale to be a reality, and the estate was on notice of that fact through notice to Hermann, one of the trustees. If the parties to a written agreement expressly stipulate in the writing that it is to give rise to no legal relation, that stipulation will render the agreement unenforceable. If they so stipulate orally, or in other writings, at the time when they make the written agreement, the result is the same. See New York Trust Co. v. Island Oil & Transport Co., 2 Cir., 34 F.2d 655, 656; In re Hicks & Son, 2 Cir., 82 F. 2d 277, 278; Corbin, The Parol Evidence Rule, 53 Yale Law J. (1944) 603, 615–617; Williston, Contracts (rev. ed. 1936) 35–37; L.R.A.1917B 263; Restatement of Contracts, § 71(c); Cheshire and Fifoot, Law of Contracts (1945) 75.

See also In re Hicks & Son, 82 F.2d 277, 279 (2d Cir. 1936).[1]

Appellant maintains that valid inferences can be drawn by the trier of the facts establishing that there was a mutual understanding that Kilpatrick Brothers would not be bound. We disagree. The best that the evidence hints at is that there might be some understanding that a secondary party, Ramtec, would be using the equipment,[2] but there is no substantial evidence from which the trier of the facts could determine that the parties did not intend that the contract would operate in accordance with its terms, that is, that Kilpatrick Brothers would be bound. Accordingly, we conclude that the trial court was correct in its holding.

■ Nor does the evidence establish that there existed a mistake which would serve to relieve appellant. If there was a mistake, and we doubt it, it was unilateral and subjective and was not brought home to I.B.M. The latter was not advised by Kilpatrick Brothers that it had made a mistake, and in these circumstances the mistaken party remains bound. See 3 Corbin on Contracts § 599.

■ Finally, there is even less merit in appellant's contention that Neale lacked authority to sign the contract. The evidence is all to the contrary. There is ample evidence of authority, actual or apparent, and of ratification. In his deposition William Kilpatrick testified that he was fully aware of, and was present at, the negotiations which culminated in the signing of the lease agreement, and he was also cognizant of the signing of the contract on April 30, 1969 by Neale. Not only did Kilpatrick fail to register any dissatisfaction with the agreement or with the signing of it by Neale, he enjoyed the fruits of the contract and sought what amounted to rescission only after the suit was brought. Thus, there was a clear manifestation of intent to carry out the contract, and formal approval of Neale's authority was unnecessary.

■ The final question arises on the contention of I.B.M. that the trial court erred in denying attorney's fees. Involved herein is the construction of the relatively new Oklahoma statute, 12

1. Judge Learned Hand wrote for the court:
Nevertheless, it appears to us that the lease and the loan did not create any obligation at the outset; that they were mere forms, intended never to become binding on the companies, and for that reason never contracts. It is well settled that whatever the formal documentary evidence, the parties to a legal transaction may always show that they understood a purported contract not to bind them; it may, for example, be a joke, or a disguise to deceive others. New York Trust Co. v. Island Oil & Transport Corporation, 34 F.2d 655, (C.C.A.2d); Lavalleur v. Hahn, 152 Iowa 649, 132 N.W. 877, 39 L.R.A., N.S., 24; Humphrey v. Timken Carriage Co., 12 Okl. 413, 75 P. 528; Coffman v. Malone, 98 Neb. 819, 154 N.W. 726, L.R.A.1917B, 258; Southern St. Ry. Adv. Co. v. Metropole Shoe Mfg. Co., 91 Md. 61, 46 A. 513; Keller v. Holderman, 11 Mich. 248, 83 Am.Dec. 737; McClurg v. Terry, 21 N.J.Eq. 225; Bell et al. v. Mulkey (Tex.Civ. App.) 248 S.W. 784, 785; Williston, § 21; Restatement of Contracts, § 71 (c). It is no objection that such an understanding contradicts the writing; a writing is conclusive only so far as the parties intend it to be the authoritative memorial of the transaction. Whatever the presumptions, their actual understanding may always be shown except in so far as expressly or implicitly they have agreed that the writing alone shall control. While it is true that an intent to make a contract is not necessary to the creation of a contract and that parties who exchange promises will find themselves bound, whatever they may have thought, nevertheless they will not be bound if they agree that their words, however coercive in form, shall not bind them.

2. The evidence overwhelmingly demonstrates, however, that I.B.M. believed that Ramtec was a division of Kilpatrick Brothers rather than a separate entity.

Okl.Stat.1970 § 936.[3] The framers of this Act apparently sought to cover the collection case and to authorize the award of a lawyer's fee and costs where the defendant resists liability and requires the obligee to file an action. The judge ruled that this was not a "contract for machine services" as it was denominated, but was instead a lease which was not within the terms of the statute.

Of the charges included in the final statement, part were attributable to services and part were the result of the sale of supplies. The machinery was rented on the basis of a fixed charge per month plus an additional charge for each hour exceeding 176 hours per month. Equipment was added from time to time, and additional amounts were charged for this. The machines were serviced at no extra expense. Instructional services were furnished without extra charge. In our view, the arrangement satisfies the requirements of the statute in that its essential character is a furnishing of services and equipment. In addition, the statement sued upon qualifies as either an "open account," a "statement of account," or an "account stated" in that it involves a series of debits and credits and a balance. There were a number of separate transactions with a net amount owing. The amount owing consisted of unpaid rentals, transportation charges and unpaid bills for supplies (bills were sent on a regular basis). Certainly this constitutes a statement of account between the contracting parties. Therefore, we consider as erroneous the court's apparent ruling that because the contract took the form of a lease it automatically was excluded. It is our conclusion that the instant fact situation is of the type that the framers of the Act contemplated when it was enacted.

 The amount of the award, considering the extent and complexity of the pretrial proceedings leading up to the entry of judgment, was not unfair. The court carefully considered the evidence, and the amount fixed is fully supported.

Accordingly, the judgment of the district court is affirmed except that portion of it which denied the cross-claim for attorney's fees. The judgment denying attorney's fees is reversed, and the cause is remanded for the entry of a judgment in favor of I.B.M. in the amount previously fixed by the trial court.

---

3. This provides:

> *Attorney fees taxed as costs in actions on certain accounts, bills and contracts.*
>
> In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject to the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.