651 F.2d 1349
 7 Bankr.Ct.Dec. 442
 In the Matter of KING RESOURCES COMPANY and International
Resources, Ltd.,
Debtors. KING RESOURCES COMPANY and International Resources,
Ltd., Debtors-Appellees,
v.
PHOENIX RESOURCES COMPANY, Appellant.
 No. 79-1256.
 United States Court of Appeals,
Tenth Circuit.
 Argued Oct. 19, 1980.
Decided March 13, 1981.
 
 Miles M. Gersh, Denver, Colo. (William R. Fishman and David H. Drennen, Denver, Colo., on brief) of Fishman, Gengler & Geman, P.C., Denver, Colo., for appellant.
 Thomas J. Kerwin of Kerwin & Elliott, P.C., Denver, Colo. (Jane Anne Murphy of Kerwin & Elliott, P.C., Denver, Colo., John E. Hoffman, Jr. and Stephen F. Ellman of Shearman & Sterling, New York City, with him on brief), for debtor-appellee Citibank, N.A.
 Thomas S. Nichols, Denver, Colo. (Robert L. Shanstrom, Denver, Colo., with him on brief) of Davis, Graham & Stubbs, Denver, Colo., for debtor-appellee United Bank of Denver, N.A.
 Before SETH, Chief Judge, SEYMOUR, Circuit Judge, and PALMIERI, District Judge*.
 SETH, Chief Judge.
 
 
 1
 This is an appeal by Phoenix Resources Company, the successor to King Resources Company by a Chapter X reorganization. The appeal raises a question as to the validity of fees-compensation-reimbursement awarded to United Bank of Denver, N.A. and to Citibank, N.A. for their services as indenture trustees during the course of the reorganization.
 
 
 2
 The trial court made the awards over the objections of the Securities and Exchange Commission and Phoenix Resources. The objections were based on section 249 of the Bankruptcy Act which they asserted prohibited such fees when the fiduciaries had voluntarily sold their individual claims during the course of the proceedings.
 
 
 3
 The trial court held in substance that section 249 was superseded by Bankruptcy Rule 10-215 which permitted such fees on court approval of the sale of claims.
 
 
 4
 Appellee banks, as mentioned, were the trustees in indentures issued by King Resources. With the Chapter X proceedings their duties to the indenture holders continued with the added responsibility to protect the holders during the reorganization. This was a difficult task but was not an uncommon one for indenture trustees. The banks were thus active from the outset of the proceedings in the formulation of plans, negotiations with others, and participation in the confirmation hearings. There is nothing in the record to show that the banks sought to be relieved as trustees. The indenture holders ultimately received or will receive shares of stock in the successor corporation. There is no suggestion that these holders were not faithfully and diligently represented by the banks.
 
 
 5
 The indenture trustees as fiduciaries so represented claims against the debtor which in total were approximately 42 percent of pre-petition allowed claims. The trust indentures were by their terms subordinated to the "senior" debts. The principal difference between the position of the indenture holders and the senior debt creditors related to the conversion rights and this was a substantial dispute. Values were changing and an amended plan was approved February 4, 1976. The United Bank sought compensation-fees-reimbursement in the amount of $343,756.78, and Citibank in the amount of $556,016.30.
 
 
 6
 The problem in this appeal arises from the fact that in the reorganization proceedings these two banks also represented themselves in seeking to recover on debts owed to them by King Resources. Each bank had made loans of about three million dollars to King Resources and the debts arose from these loans. Claims were filed in the estate for these debts along with the other creditors, and the banks participated in such capacity in the formulation of the plan of reorganization, negotiation with other claimants, and in pre-confirmation. The plan was confirmed in October of 1977. The claims of the banks were allowed during the course of the proceedings.
 
 
 7
 The two banks, after the Bankruptcy Court had approved the Plan of Reorganization in May of 1977, decided to sell their individual claims. Thus United Bank in August of 1977 sold to Texas International Company for $3,259,203.59 its claim (T-737). About the same time Citibank sold its claim (T-467) to the same purchaser for $3,328,158.12. No court approval of the sales was sought. Texas International acquired claims from others and apparently bought all the senior debt claims. As mentioned, the banks petitioned under section 242 of the Bankruptcy Act for fees and expenses incurred in the performance of their duties as fiduciaries. Under this section the bankruptcy judge could award "reasonable compensation" and reimbursement for costs incurred by "indenture trustees" among other fiduciaries. The petitions were in detail with supporting affidavits, statements, and tabulations. These showed all the work done, when and where the services were performed, and by whom, all in great detail. The body of the petition described how beneficial the services were to the indenture holders.
 
 
 8
 The appellant Phoenix and the Securities Exchange Commission, as mentioned, objected to the petitions on the ground that section 249 of the Bankruptcy Act prohibited the payment of such fees because the banks had voluntarily sold their own individual claims after the proceedings had commenced. In response to the objections, the banks asked the court to retroactively approve the sale of their claims and to award the fees. Hearings were held on several occasions and the court overruled the objections and approved the sale of the claims made approximately a year before.
 
 
 9
 The judge awarded fees and reimbursement in the amount of $343,757.78 to United Bank, the trustee, for about 25 million dollars of indentures, and $556,016.30 to Citibank as trustee for a 15-million-dollar foreign issue of bearer debentures. In making the award the court in substance held that Bankruptcy Rule 10-215 had replaced or superseded section 249 of the Bankruptcy Act, and further that the Rule permitted retroactive approval of the voluntary sales the banks had made of their own claims. This approval then made it possible to award fees for services as fiduciaries.
 
 
 10
 The Advisory Committee's Note to the Rule states that "(p)aragraph (4) of subdivision (c) effects a change from § 249 of the Act. That section prohibits compensation to a fiduciary or representative who voluntarily bought or sold claims ...." The Committee continues and points out that the Rule would permit approval whether the transaction was voluntary or not.
 
 
 11
 Section 249 of the Bankruptcy Act permitted court approval only of involuntary transfers of individual claims. If any voluntary transfers were made the fiduciary was automatically barred from receiving compensation. This was the uniform construction given the Act. See Wolf v. Weinstein, 372 U.S. 633, 83 S.Ct. 969, 10 L.Ed.2d 33. Rule 10-215(c)(4) by its terms permits the fiduciary to be awarded compensation if the court approves either a voluntary or involuntary transfer of claims. Thus a very substantial difference exists between the Act and the Rule as to the voluntary transfers with which we are here concerned. The position of the bankruptcy court and the banks can only be supported if Rule 10-215(c)(4) effectively removed the absolute statutory bar. Other issues are urged by appellant but are not herein considered.
 
 
 12
 The Rules were formulated, approved, and adopted pursuant to a typical enabling statute, 28 U.S.C. § 2075. In part it provides for rules which (a) "prescribe ... practice and procedure ..." and (b) which do not "abridge, enlarge or modify any substantive right." The procedure for approval of drafts of rules, transmittal to Congress and its action was the same as for Rules of Civil Procedure.
 
 
 13
 The initial problem is not a matter of construction of the Rule or the Act; instead, the question is whether the Rule is within the limits of the enabling act. Thus does the Rule prescribe practice and procedure and not enlarge, abridge, or modify any substantive right?
 
 
 14
 The Rule changes the Act as to voluntary transfers in that it moves such transactions out of the category of those absolutely prohibited by statute if compensation is expected into one where they may be approved by the court. The 249 prohibition was imposed whether or not there was any wrongdoing in the trading, and whether or not the fiduciary had performed valuable service in its fiduciary capacity. This has to be a very substantial change. It is apparent that only with voluntary transfers could real problems arise.
 
 
 15
 Fees are a significant part of any bankruptcy legislation. They were a substantial factor in the Bankruptcy Act and its administration. They are a basic consideration to most if not all of those who participated in the administration under Chapter X.
 
 
 16
 Were it not for the fee and compensation provisions applicable to these Chapter X proceedings for accountants, managers, lawyers, trustees, experts, and fiduciaries the system would not have functioned. Compensation is the lubricant which makes the bankruptcy machinery work when applied in the proper places in the proper amount. The expectation of compensation and the "right" to compensation of those who perform valuable services based on the provisions of statute is for this group and others a substantive matter. It is also substantive in other aspects of bankruptcy. Compensation is a basic, essential, and independent part of the system.
 
 
 17
 With the ebb and flow of criticism of reorganization fees and compensation, and the demand for controls and limits, fees as such have taken on a different aspect. They became a matter, an element or subject pretty much separate and apart from the others in the mix. They have become a larger, more complex factor in the planning with the growing complexity of businesses and the need for a greater variety of skilled persons in the reorganization. The business here concerned and the "related" activities demonstrate this very clearly. By statutory treatment and usage compensation has thus come to occupy a position as an independent element in reorganizations. Those who in good faith provide valuable services have a right to rely on the provisions for compensation.
 
 
 18
 The question whether the compensation here considered is procedural or substantive should be examined in the context of bankruptcy proceedings as we have indicated above. The Court in Wolf v. Weinstein, 372 U.S. 633, 83 S.Ct. 969, 10 L.Ed.2d 33, refers to the compensation problems and abuses by fiduciaries and others which "was one of the principal reasons for the enactment of § 77B of the Bankruptcy Act in 1934." The Court said it gave "important new judicial powers to regulate the payment of compensation." Also the Court there notes that the Chandler Act in 1938 "measurably strengthened these powers of judicial superintendence, particularly with respect to corporate reorganizations, through the new provisions of c. X." Also of significance the Court in Wolf said:
 
 
 19
 "Chapter X sought also to broaden the participation of interested groups in the reorganization by ensuring compensation to several classes which theretofore often served the estate as volunteers."
 
 
 20
 This is important in our consideration of compensation.
 
 
 21
 The extensive and detailed treatment of compensation in the several statutes does not make the subject substantive rather than procedural. It is obvious that just because compensation is important does not make it substantive. This importance has however led to a separate treatment and use of fees including the attraction of skilled persons into reorganizations. Thus fees are important but more than that they have become a separate element or factor apart from the other elements and have been structured to provide rights which may be relied on by those performing valuable services. The petitions of the banks in this proceeding demonstrate this in their detailed description of the extensive and intensive valuable services performed in a variety of capacities, places, and over an extended period of time.
 
 
 22
 The removal by the Rule of an outright prohibition against receiving compensation was a change in a substantive matter, was an abridgment or modification of substantive rights of the estate and an enlargement of the rights of fiduciaries. The Rule must be regarded as going beyond the enabling legislation, and section 249 must be applied.
 
 
 23
 We should also consider the substantive-procedure distinctions in cases considering other rules. The parties have discussed Sibbach v. Wilson & Co., 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479, at some length. There the Court considered rights "and duties recognized by substantive law" in its consideration of Rules 35 and 37 of the then "new" Rules of Civil Procedure. The opinion is significant but unfortunately is not helpful on our problem.
 
 
 24
 In Mississippi Pub. Corp. v. Murphee, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185, the Court considered Rule 4(f) of the Rules of Civil Procedure and stated that it "does not operate to abridge, enlarge or modify the rules of decision by which the court will adjudicate its rights." The "rights" in the case are changed and the application of these rights is changed. See also Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8.
 
 
 25
 The Third Circuit in Matter of Decker, 595 F.2d 185, considered a burden of proof issue under the Rules. The court considered that the burden was a procedural matter for the Rules. However, we are concerned with quite a different matter not related to the "process of litigation" as therein considered.
 
 
 26
 The Erie v. Tompkins cases have, of course, considered attorney fees sought under state law where no such right existed in federal law or such fees are prohibited. Fees in this context are placed in the rule of decision category. Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141, clearly does so, and in Toland v. Technicolor, Inc., 467 F.2d 1045 (10th Cir.), we said: "In diversity litigation this court applies state law with respect to the allowance of attorney fees," citing Hardware Dealers Mutual Fire Insurance Co. v. Smart, 293 F.2d 558 (10th Cir.), and Kilpatrick Brothers, Inc. v. International Business Machines Corp., 464 F.2d 1080 (10th Cir.). Bickford v. John E. Mitchell Co., 595 F.2d 540 (10th Cir.), contains a similar holding. Thus in diversity cases generally, and certainly in this circuit, attorney fees are determined by state law and are substantive for diversity purposes.
 
 
 27
 Congress adopted the Bankruptcy Rules in 1975. It was then considering the Bankruptcy Reform Act which eventually was to abolish section 249, but there is no conclusion to be drawn from the timing of those events. We cannot assume there was any interaction between the two considerations. That Congress may have been considering the repeal of section 249 as part of the extensive revision of the Act is not significant but no connection is shown.
 
 
 28
 In Gurule v. Wilson, 635 F.2d 782 (10th Cir.), we have held that attorney fees in certain federal actions are such a part of the cause that they must be determined as to entitlement and amount before a final judgment is entered.
 
 
 29
 The banks urge that the Supreme Court in transmitting the rules to Congress demonstrated that Rule 10-215(c)(4) is within the enabling legislation. The Supreme Court has stated otherwise. The Court in Mississippi Pub. Corp. v. Murphee, 326 U.S. 438, 444, 66 S.Ct. 242, 245, 90 L.Ed. 185, said:
 
 
 30
 "The fact that this Court promulgated the rules as formulated and recommended by the Advisory Committee does not foreclose consideration of their validity, meaning or consistency."
 
 
 31
 Also, the Court in Meek v. Centre County Banking Co., 268 U.S. 426, 45 S.Ct. 560, 69 L.Ed. 1028, held invalid a General Order in Bankruptcy it had promulgated.
 
 
 32
 The banks also urge that the Rules were drafted or approved by several august organizations and this should create a presumption that they do not go beyond the enabling act. The groups here concerned and many, many others draft legislation and rules and in so doing perform a great public service, but this cannot be taken by the courts as a guarantee or create a presumption that the product is perfect. The Congress and legislatures also carefully draft legislation. We cannot examine how scholarly the group is and assign a presumption commensurate therewith. All sources of legislation must be treated the same and we must do so here. No one who is actually involved in the drafting process and the give-and-take involved would have it any other way.
 
 
 33
 We do not consider the issue of abuse of discretion not raised in the trial court, nor whether retroactive approval was possible.
 
 
 34
 The case must be and is reversed with directions to disallow the fees, compensation, and reimbursements awarded to United Bank of Denver and to Citibank.
 
 
 
 *
 Of the United States District Court for the Southern District of New York, sitting by designation